# Peter Schoenhofen Brewing Company and Loren Love v. John Merrion.

1. HOUSEHOLD GOODS—*The Term Defined.*—The term "household goods," as used in the act of July 7, 1889, "to regulate the foreclosure of chattel mortgages on household goods, wearing apparel and mechanic's tools," means such goods as, being suitable to the condition and station in life of the mortgagor and the way he lives, are used by him in his household for personal, home or household convenience.

2. SAME—*What Are Not Household Goods.*—Goods which are kept for mere purposes of trade or business, are not within the meaning of the act.

Replevin.—Appeal from the Circuit Court of Cook County; the Hon. JOHN GIBBONS, Judge, presiding. Heard in this court at the October term, 1896. Affirmed. Opinion filed December 14, 1896.

## STATEMENT OF THE CASE.

This is an appeal from a judgment rendered in the Circuit Court of Cook County, on the 15th day of February, 1896.

On the 28th day of August, 1893, J. V. Merrion, a son of the appellee herein, being indebted to the Peter Schoenhofen Brewing Company, executed a chattel mortgage conveying to the said company certain goods and chattels used by him in a saloon and boarding house located at No. 9001 Ontario avenue, in the city of Chicago. The mortgage was recorded in the recorder's office on the 31st day of August, 1893. The goods and chattels described in the said chattel mortgage were : One bar and back bar, two writing desks, one mirror, one two-faucet beer pump and all connections complete, one glass partition, one hotel counter, one cigar case and stand, one clock, two tables, six chairs, all glassware and bar utensils, sixteen beds, bedding and mattresses, twenty-four chairs, sixteen dressers, one parlor suit of five pieces, one range, all carpets, six dining room tables, three dozen common chairs.

At the time of the execution of the chattel mortgage, the

mortgagor was a married man living with his wife in the rooms above the saloon; this portion of the premises was used as a boarding house. The wife did not join in the execution of the mortgage.

On the 14th day of August, 1894, Thomas V. Merrion, a brother of the mortgagor, as the agent of John Merrion, the appellee herein, removed a portion of the goods and chattels used by the mortgagor in the boarding house, to a warehouse. On the following day the mortgagor gave to his father, the appellee herein, a bill of sale for the goods and chattels stored in the warehouse.

On the same day Loren Love, one of the appellants, as the agent of the Brewing Company, foreclosed the chattel mortgage and took possession of the saloon fixtures at 9001 Ontario avenue, and also of the goods which had been stored in the warehouse, which consisted of one writing desk, one writing table, one clock, eight pictures, one set of window curtains, one hundred and twenty feet of awning, one set of gas fixtures, six cuspidors, one range, three heating stoves, six dining room tables, forty-eight dining room chairs, one side-board, one lot of dishes, one lot of silverware, one lot of kitchen utensils, two dining room stoves, six pieces of parlor furniture, two folding beds, sixteen beds, sixteen dressers, sixteen toilet sets, bowl, cuspidors; one lot of carpets and matting, one lot of fixtures, one lot of bedding, one lot of linen, sixteen bed-springs, sixteen mattresses, one lot lamps, three rocking chairs, one lot curtains, one lot of common curtains, two kitchen tables, two parlor stoves, one gasoline stove, and bric-a brac.

On August 23, 1894, the property taken by Love was sold at public sale to Henry Schauermeyer, who took immediate possession.

On the day of the sale, August 23, 1894, but some hours afterward, the appellee, John Merrion, commenced this suit against the Brewing Company, and their agent, Love, to recover possession of the goods mentioned in the bill of sale, and sold by Love under the chattel mortgage. Schau-

ermeyer, the purchaser at the mortgage sale, was not made a party to the suit. No goods were taken by the sheriff under the replevin writ.

The plaintiff's declaration contained the usual counts in replevin and a count in trover. The issues were made up and the case was tried before a court without a jury. Judgment was rendered against the defendants for $200, from which judgment this appeal is taken.

Counsel for appellant says: "There is no dispute as to the facts. The only question is the validity of the chattel mortgage under which the sale was had."

M. M. JACOBS, attorney for appellants, contended that the goods and chattels described in the chattel mortgage are not household goods within the meaning of the statute. 2 Starr & Curtis' R. S. (2d Ed.), p. 2773; Gaines v. Williams, 147 Ill. 458; Commonwealth v. Strembach, 3 Rawle (Pa.), 341.

Chattel mortgages on household goods, executed by a married man, the wife not joining therein, are voidable only, not void. Van Shaak v. Robbins, 36 Iowa, 205; Somes v. Brewer, 2 Pick. 191; Green v. Kemp, 13 Mass. 518; Terrill v. Auchauer, 14 O. St. 85; Crocker v. Balangre, 6 Wis. 645; Anderson v. Roberts, 18 Johns. 529.

No appearance for appellee.

MR. JUSTICE WATERMAN DELIVERED THE OPINION OF THE COURT.

The term "household goods" has been frequently construed with reference to its meaning when used by testators, and also with reference to its significance when employed in statutes. It is said that in wills this expression will pass all articles of the household which are not consumed in their enjoyment, that were used or purchased, or otherwise acquired by the testator for his house, but not goods in the way of his trade. 1 Jarman on Wills, Perkins' Ed., 589.

Substantially the same definition is given in Anderson's

Dictionary of Law, and is said to be the true meaning when such expression is used by a railroad in its statement that household goods will be transported at a certain rate of fare. Smith v. Findley, 34 Kas. 316.

The term "household goods" is more extensive than the expression "household furniture." Canagy v. Woodcock, 2 Mumford (Va.), 234.

The expression "household goods" was held in Pratt v. Jackson, 3d Brown's Parliamentary Cases, 199, not to include bedding not in the house of the testator, but used by him in a hospital for the enjoyment of sick and wounded seamen.

Section 2 of an act to regulate the foreclosure of chattel mortgages on household goods, wearing apparel and mechanic's tools, in force July 7, 1889, is as follows:

"No chattel mortgage executed by a married man or married woman on household goods shall be valid unless joined in by the husband or wife, as the case may be."

It has been held by the Supreme Court, in Gaines v. Williams, 146 Ill. 458, that section 1 of this act, forbidding the foreclosure of a chattel mortgage on the necessary household goods, etc., of any person or family, except in a court of record, is to be liberally construed in favor of the mortgagor, and it would seem that section 2 of the act is to be construed in the same manner. We think the term "household goods," as used in this act, means such goods, as, being suitable to the condition and station in life of the mortgagor and the way he lives, are used by him in his household for personal, home or household convenience, and that goods kept for mere purposes of trade or business, are not within the meaning of the act.

The only difficulty existing in this case arises out of the fact that the goods used for the trade and business of the mortgagor were not, at the time the mortgage was made, separated in any way from the household goods proper, for, and made use of by him and his family for home and housekeeping.

Upon the trial it appeared that when appellee, the mort-

gagor, closed his saloon and moved the articles, for the recovery of which this replevin suit is brought, to a warehouse, giving a bill of sale of the same to the plaintiff, he left everything in the saloon, including the partitions, glasses and some liquors, to pay his indebtedness under the mortgage, he estimating such articles to be worth about $500; and that these things, together with those sold to the plaintiff and stored in the warehouse, were taken by appellants under their mortgage.

The mortgagor testified that the property for which the writ of replevin was taken out, was worth $349.60, all of which, he testified, appellants took possession of by force, and none of which were recovered upon the replevin writ; that all the household goods were necessary in his house and family; that the four beds were worth $6 each, and the four springs were worth $1 each; that the pictures cost him $16; that his family consisted of himself, his wife and one child.

It is manifest, by a comparison of the list of goods described in appellant's mortgage, with those which it seized and carried away, that it took many articles to which it can not be pretended it had any right, as eight pictures, one set of window curtains, 120 feet of awning, set of gas fixtures, one range, three heating stoves, one lot of silverware, one lot of kitchen utensils, two dining room stoves, sixteen toilet sets, two parlor stoves, one gasoline stove, bric-a-brac, and other articles.

The mortgagor, at the time of making of the mortgage, prepared a list of the articles mentioned therein, having attached thereto the value placed by him thereon; this list was introduced in evidence by appellant, and was intended to be, but is not, inserted in the bill of exceptions.

Under all the evidence, we think the court was warranted in making a finding of $200 for the plaintiff.

The judgment of the Circuit Court is therefore affirmed.