### Otto Taylor v. Thomas Crowe.

1. LEVY—*within what time, may not be made.* A levy constitutes a trespass if made before the expiration of the time allowed by statute to the debtor within which to schedule.

2. LEVY—*what notice of adjudication of debtor as bankrupt, sufficient to charge officer.* Actual notice, however obtained, that a debtor has been adjudged a bankrupt, is sufficient to charge an officer with a writ, and to render any levy made after such adjudication a trespass.

3. INSTRUCTIONS—*must not single out one party.* Where both parties to a cause are individuals, an instruction which singles out one of them and directs the jury with respect to judging of his credibility, is erroneous.

4. INSTRUCTIONS—*must not submit questions of law to jury.* Instructions must not leave questions of law to the determination of the jury.

Action of trespass. Appeal from the Circuit Court of Ford County; the Hon. THOMAS M. HARRIS, Judge, presiding. Heard in this court at the May term, 1905. Reversed and remanded. Opinion filed October 9, 1905.

PEIRCE & PEIRCE and SCHNEIDER & SCHNEIDER, for appellant.

FRANK LINDLEY, CLOUD & THOMPSON and NELLIE B. KESSLER, for appellee.

MR. PRESIDING JUSTICE PUTERBAUGH delivered the opinion of the court.

This is a suit in trespass *vi et armis,* by appellant against appellee, to recover damages for the alleged taking and injury to appellant's personal property, thereby depriving him of the use thereof, and hindering and preventing him from carrying on his necessary affairs and business; and

for the further breaking and entering appellant's dwelling house and making and continuing a disturbance therein, and expelling him and his family therefrom, thereby depriving them of the use and occupation thereof.

Upon a trial in the Circuit Court the jury returned a verdict for the defendant, upon which judgment was rendered. Whereupon the plaintiff excepted, and prayed this appeal.

At the time the wrongs complained of are alleged to have been committed, appellee was sheriff of Ford county, Illinois, and appellant, a farmer, living with his wife and children on a rented farm in that county. He was the owner and in possession of household goods, furniture, provisions, supplies, carpenter tools and harness, all of about the value of $250. On January 2, 1903, a judgment was entered against him in the Circuit Court of McLean County, by confession, for $1,292, predicated upon a judgment note given by appellant. Execution was issued and delivered to appellee as sheriff of said county on January 3, 1903. On January 5th he served appellant with a copy thereof, upon the back of which was indorsed the usual notice that a schedule must be filed by appellant with the clerk or sheriff within ten days, in order that he might claim his statutory exemption. On January 6th appellant filed in the United States District Court for the Southern District of Illinois, a petition for an adjudication of bankruptcy, in which said note and judgment was scheduled, and said goods and chattels claimed as exempt. On January 7th, appellant was duly adjudged a bankrupt in accordance with such petition. Afterward, on January 9th, appellee in company with several others, acting under such execution, went to appellant's farm and levied upon and took possession of appellant's goods and chattels, and placed a custodian in charge thereof, whereupon appellant, together with his family, left the house leaving the custodian in possession of the same, and of said goods and chattels. On January 9th, appellee made return of the execution by certifying that he had levied upon certain specified

articles, describing them, "and in fact all of the household goods on the premises above described." On January 15th appellant filed his schedule with the clerk of the Circuit Court, particularly describing all of his said goods and chattels, and claiming them as exempt under the laws of the State of Illinois. On January 17th appellee made a supplemental return of the execution to the effect that by order of plaintiff's attorney he had on January 13th released from the levy theretofore made by him, the goods and chattels described in his former return.

The evidence as to what took place at the time of the levy is conflicting. That adduced by appellant tends to show that upon the occasion thereof, appellee ordered appellant to take his family and leave the house; that the following day appellant returned to the house and asked permission of the custodian to enter for the purpose of getting some clothing, but that he was denied admission; that during the following two weeks appellant returned to the house several times and found it locked, and was unable to enter; that said custodian continued in the occupation and use of the house, burning appellant's fuel, consuming his provisions, and occupying his beds until the 13th or 14th of January, when he left the premises, locking the doors and taking the keys thereto; that about February 26th, appellant returned to his home, forced an entrance, and retook possession of the same; that the provisions had been either spoiled or wasted, the house, furniture and clothing damaged to the extent of $75, and that several articles of personal property were missing.

The evidence adduced by appellee tends to show that when he made the levy the house was open; that no protest was made by appellant against appellee's entering the same; that they in fact admitted him. Appellee explicitly denies that he ordered appellant to leave, but on the contrary testified that he told appellant that he need not move his household goods or leave the property. The custodian denies that he refused admission to appellant on the day following the levy, or that he occupied the beds of appel-

Taylor v. Crowe.

lant or consumed or wasted the provisions or supplies, other than a small quantity of coal of slight value, which he used for the purpose of keeping the house warm; or that either the house, furniture, or clothing were at all damaged.

The pleadings in the case are voluminous beyond justification or reason, and we will not attempt to detail or analyze the same.

In the view we take of the case the leading question of fact for the determination of the jury was, whether or not appellee had notice of the adjudication of bankruptcy before the levy. Inasmuch as the parties joined issue to the country upon this question, we are of opinion that appellant cannot be heard to say that appellee was liable for failing to return the property upon obtaining actual knowledge of the bankruptcy after the levy had been made.

The primary questions of law involved are, whether the making of the levy by appellee before the expiration of the ten days allowed appellant by the statute in which to schedule and claim his exemptions, constituted a trespass; and whether appellee was bound by actual notice of the bankruptcy proceeding, or whether service upon him of a written or printed notice of the same was necessary.

Section 2 of the statute relative to the exemption of personal property, provides that :

"Whenever any debtor against whom an exemption has been issued, desires to avail himself of the benefit of this act, he shall, within ten days after a copy of the execution * * * is served upon him, in the same manner as summonses are served in chancery, such copy of execution * * * to have endorsed thereon a notice signed by the officer having such writ, notifying the debtor that he must file a schedule of his property within ten days from the service thereof in order to claim his exemption; * * * the debtor shall make a schedule of all his personal property * * * and shall deliver the same to the officer having the execution * * * or file * * * in the court where the writ is issued, * * * and thereupon

the officer * * * shall summon three householders, who * * * shall fix a fair valuation upon each article contained in said schedule, and the debtor shall then select the articles he or she may desire to retain * * * and deliver the remainder to the officer," etc. Rev. Stat. (1903), page 945.

The majority of this court are of opinion that it is intended by the statute that no levy shall be made until after the expiration of ten days from the time of service of a copy of the execution and notice to schedule upon the judgment debtor. The language thereof, to the effect that after the valuation of each article contained in the schedule has been fixed, the debtor shall then select the articles he desires to retain, "*and deliver the remainder to the officer*," seems to contemplate that, in the interim, the property shall remain in the possession of the debtor. Otherwise how could he, after his selection, " deliver the remainder to the officer."

To constitute a valid levy it is necessary that the officer shall not only indicate an intention to seize the property, but he must reduce the property to possession, or at least bring it within his immediate control. He must do some act which, if not protected by the writ, would make him a trespasser. Chittenden v. Rogers, 42 Ill. 105. True, it is, that ordinarily it is the duty of an officer having a writ in his hands to execute the same without unnecessary delay. We think, however, that under the provision of the statute under consideration, he is relieved of such responsibility. Statutes exempting property from levy and sale for debt are not to be strictly construed, but they should receive such construction as will carry out the obvious purpose of the legislature in enacting them, to protect the debtor. McClellan v. Powell, 109 App. 222.

If an officer has the right to levy within the ten days, he has the further right to do so simultaneously with the giving of notice to schedule, and at once take possession of, remove and retain all of the property until it is scheduled, appraised, and the debtor's selection made and allowed.

Taylor v. Crowe.

During the time necessary for such proceedings the debtor would be, for an indefinite period, deprived of the use and enjoyment of the property, however essential its use might be to him. The officer might take and retain the stoves, provisions, beds and bedding of the debtor, and thus for a time, at least, deprive him and his family of the bare necessities of life.

Such officer would render himself primarily liable for the expense of the removal, care, custody and return of such articles as were selected by the debtor upon his exemption, for which the law provides him no reimbursement. In Cook v. Scott, 1 Gilm. 333, which was an action in trespass for selling exempt property, instituted prior to the enactment of the provisions of the statute requiring ten days' notice to be given to the debtor, or fixing a time in which he must claim his exemption, the court expresses the following views, which we think analogous to the question under consideration :

" The end intended to be accomplished through the agency of this law is, to protect from levy and sale on execution, property of a certain quality and value, to be selected by the debtor. But when must that selection be made? Why, manifestly, as a general rule, before the levy on such property. Then, in order that the exercise of such right by the debtor may not, in any case, be defeated, it is the duty of the officer having an execution in his hands, before he proceeds to take or seize any of the personal property of the defendant in such execution, by a levy thereon, to notify such defendant of his having such execution in his hands, if practicable. But if the defendant in the execution makes his selection and notifies the officer thereof, and the said officer afterwards proceeds to take or seize any article of property thus selected, on said execution, unless when authorized to do so by the finding of appraisers, summoned and sworn according to the fifth section of this same act, he thereby becomes a trespasser; and this is the case usually supposed to occur of a ' taking or seizing,' referred to in the third section. But is this the only class of

cases, in which the officer may incur this penalty, as insisted by the appellant's counsel? I think not. Such a construction of this law would, in my estimation, enable the officer to evade or defeat its intended operation, and although a penal statute, and therefore to be construed strictly, still the exposition given to it should not be so strict as to effect any such result. Then, if an officer proceeds to seize or take the defendant's property on execution, without giving the requisite notice, he cannot thus, by his own neglect of duty, make the condition of the defendant any worse than it would have been before such levy, had the defendant been apprised that it was about to be made."

The judgment having been obtained and the execution issued within four months of the filing of the petition in bankruptcy, both became null and void upon the adjudication under the National Bankruptcy Act, which provides that "All levies, judgments, attachments, or other liens obtained through legal proceedings against a person who is insolvent at any time within four months prior to the filing of a petition in bankruptcy against him, shall be deemed null and void in case he is adjudged a bankrupt." Nat. Bankruptcy Act of 1898, sec. 67f.

It seems to be conceded that if the levy and seizure were made with knowledge on the part of appellee of the proceedings in bankruptcy, he, by his acts, became a trespasser. By appellee's fourteenth given instruction the jury were told that in order to charge the defendant with notice of the adjudication in bankruptcy, prior to the time of making the levy, the plaintiff must prove by a preponderance of the evidence that the defendant received such notice prior to making the levy, or saw a notice sent out by the referee in bankruptcy, or received or saw a certified copy of the adjudication in bankruptcy; and by the fifteenth, that before the plaintiff could have any benefit of the adjudication in bankruptcy, it must appear from a preponderance of all the evidence, that the defendant had full notice of such adjudication before he made the levy.

Taylor v. Crowe.

During the trial appellant offered to prove that he caused appellee to be verbally notified of the filing of the petition, on the day it was filed, and that appellee had actual notice of the adjudication at the time he made the levy. The court held the evidence offered to be incompetent.

We are of opinion that it was unnecessary, in order to charge appellee with notice of the proceedings, that he should have either received or seen either a notice issued by the referee, or a certified copy of the adjudication, or have been otherwise officially apprised thereof. If he had actual notice, no matter how acquired, it was sufficient. High on Receivers, section 166.

It follows that the action of the court in giving the instructions referred to, and in refusing to permit appellant to show actual notice on the part of appellee, was error.

It was also improper to instruct the jury, as was done, by appellee's first and fifteenth instructions, that it must be shown that appellant had " full" notice of the adjudication, thus leaving them to infer or imply what constituted that degree or character of notice.

The twelfth instruction given for appellee is bad, for the reason that it tells the jury that, if they believed the plaintiff, Otto Taylor, or any other witness in the case, had wilfully sworn falsely, etc., they had the right to disbelieve his entire evidence if he was not corroborated by some other witnesses. It singles out and identifies the plaintiff, and its tendency was to impress the jury with the idea that the court saw some special reason for discrediting his testimony. Matthews v. Granger, 196 Ill. 164. It should have been so drawn that it would apply to either party to the suit, without pointing out either. Had the defendant been a corporation, the instruction in this respect would have been unobjectionable. C. & E. I. R. Co. v. Burridge, 211 Ill. 9. It is further objectionable in that it requires corroboration by another witness. Such is not the law. The corroboration may be by any credible evidence, or by facts and circumstances that may be fairly inferred therefrom. Angelo v. Faul, 85 Ill. 106.

Others of appellee's given instructions should have been refused for the following reasons : The second leaves the jury to determine what act " was outside and beyond the command of the writ," which is a question of law. The fourth submits to the jury the question whether the property was " unlawfully held, injured or destroyed," which is likewise one of law. The fifth ignores possible trespass in making the levy. The sixth authorizes the jury to return a verdict on one issue only and that not decisive. The seventh in effect submits to the jury the question of the sufficiency of the schedule, which is one of law. The ninth ignores the occupancy of the house by the custodian and alleged use of the property, as elements of trespass.

It is insisted by appellant that inasmuch as the return to the writ recites that " all of the household goods on the premises " were levied upon, appellee is estopped to deny that such levy included everything which was within the dwelling house at the time; that the proof shows that articles expressly exempted by statute were then within such house, and that appellee, therefore, became liable as a trespasser by reason of such levy upon exempt property. Under the statute the " necessary wearing apparel, bible, school books and family pictures of every person " are exempt from execution. The term household goods has been properly held to include such goods as being suitable to the condition and station in life of a person and the way he lives, are used by him in his household for personal, home or household convenience. Brewing Co. v. Merrion, 67 App. 123.

We are of opinion that the term " household goods " as used in the return, was comprehensive enough to and did include such articles as were by the statute exempt, if there were any such upon the premises at the time of the levy, and that the burden was upon appellee to show that there were none included in the levy. Whether exempt articles were, in fact, included in the levy, whether they were returned to appellant in good condition, in whole or in part, and to what extent, if any, the same were damaged or de-

stroyed, were all questions for the determination of the jury.

It follows that appellee's thirteenth, sixteenth and seventeenth instructions were improperly given. The given instructions, as a series, are not to be commended. They are unreasonably numerous. Several are involved, others abstract in form, thereby tending to mislead the jury. We have examined appellant's refused instructions, and without occupying the time or space to refer to them in detail, hold that almost without exception, they were properly refused.

The judgment must be reversed and the cause remanded for another trial, and we will, therefore, refrain from discussing questions relating to the weight of the evidence.

*Reversed and remanded.*