STATE EX REL. ALBERT J. MUELLER v. PROBATE COURT
OF RAMSEY COUNTY AND OTHERS.
AUGUST A. SCHROEDER, RESPONDENT.
IN RE ESTATE OF ANNA B. SCHROEDER.
ALBERT J. MUELLER v. AUGUST A. SCHROEDER.[1]

May 28, 1948.

Nos. 34,628, 34,629.

[1]Reported in 32 N. W. (2d) 863.

*Albert J. Mueller,* for appellant.
*Earl F. Jackson,* for respondent.

FRANK T. GALLAGHER, JUSTICE.

Two appeals from orders denying motions to vacate and set aside the decisions of the court and for amended findings and conclusions or new trials.

Anna B. Schroeder, the decedent named herein, died testate July 1, 1946, in the city of St. Paul, Minnesota, and left surviving her husband, August A. Schroeder, respondent herein. At the time of her death she was 81 years of age, and respondent was about 80. They were married on October 15, 1921, but there was no issue of this marriage. Both had been previously married. There was no issue of decedent's first marriage, but respondent had an adult son and daughter when he married decedent. At the time of their marriage in 1921, decedent owned the homestead in which the couple resided at the time of her death and also had some personal property, worth $10,000 or $11,000, which she had inherited from her first husband. Respondent then owned about $10,000 worth of personal property. He was employed for many years as an engineer in various breweries and by an ice and coal company, and throughout their married life they resided for a time in different places. About ten years before decedent's death, he ceased employment because of

his age and again made his home in St. Paul in the old homestead.

During a period of about ten years preceding her death, decedent executed at least three wills in which she made devises and bequests for the purpose of disposing of her estate to relatives and friends. In each of these wills, she bequeathed to respondent, her husband, the sum of $500 in lieu of his statutory rights, to which, according to the record, he consented in writing, although in testifying at the trial he could not recollect signing one or two of the consents. Those wills, however, were all made prior to the date of decedent's last will and testament and a codicil thereto made March 6, 1944, and a second codicil dated December 4, 1944, which are the only instruments for consideration here.

With reference to the will and consent dated March 6, 1944, respondent testified that his wife asked him to go to the office of appellant (Albert J. Mueller, executor of decedent's will) on that date and that when they arrived there together, after some preliminary greetings, appellant submitted "those papers to look them over and read them." Respondent said that he read over the last will and testament of his wife dated March 6, 1944. In addition to certain bequests to relatives, a cemetery association, and a home for the aged, there was a bequest to respondent of $500 in lieu of his statutory rights. The will authorized the executor to sell the homestead for cash and bequeathed the net proceeds to two persons named (other than respondent), subject to the payment out of such proceeds of any legacies provided for in the will in case there was insufficient other personal property with which to pay such legacies. After reading the will, respondent said that his wife asked him to sign the consent in connection with the will. He then testified that after reading over the paper (consent), "I said no, I said, I can't sign that. This doesn't even leave a broom left for me." He said the codicil was then prepared in the presence of respondent and his wife while they were sitting on the opposite side of appellant's desk in his office. The codicil provided as follows:

"I, Anna B. Schroeder, the testatrix herein named hereby give to my husband such of my household goods and effects as he may desire therefrom and when the same have ceased to serve that purpose, it is my wish that my sister, Hulda Behm, receive the same.

"March 6, 1944.

"ANNA B. SCHROEDER,
"Testatrix.

"In the presence of:
"LaVern Elfstrom
"Albert J. Mueller"

Respondent further testified that when the codicil was completed giving him the personal property as provided for therein his wife again wanted him to sign the consent to her will, which he did "on reluctance only."

Subsequent to the death of respondent's wife, another instrument was produced, dated December 4, 1944, written in longhand by decedent. There is nothing in the record to indicate that appellant even knew of this instrument until after the death of decedent or had anything to do with the preparation of it. This codicil read as follows:

"My sister-in-law, Metha Graul, Porthland, Mich., Box 120, shall have all my silber 12 nifs 12 forks, teespoon 12 soup spoons with all my linnen and napkins bath towels pillow case bett scheets same dresses she likes, the dining room rugs and my schulery. My fur coat shall have my nice Johanna Tasker Lake Odessa Mich. 1506 North St. and hundred dollars. Mrs. June Weigel 676 Ashland Ave tiemen ring and the camo pin. Mrs. Gust Behm shall have my watch and my dining ring and same remembers she likes. Mr. Minne Walter 1125 Burleigh St. Milwaukee Wis. shall have my clot coat with fogs gollar and summer coat. Luzi Haig my nice shall have 150.00 hundred and 50 dollars here adres 901 Western Ave Chicago Ill. and same else she want. My nice Hilds Hugo shall have the twin betts with all the bettings and same rugs pillow tishes and classes cuirtens. All the furnishes belong to me the relatives shall

take *wath* there like and hope there all will satisfiet. Mr. Albert Mueller will take care of the will I make. I will have and happe put a hath stone at my grave nerst to my first husband, Frank Beshorner.

"Mrs. Anna B. Schroeder.

"Witness

"Mrs. Bertha Miske

"Wilhelmina K. Haeusler

1243 Lafond Ave."

Shortly after Mrs. Schroeder's death, respondent petitioned the probate court of Ramsey county for admission to probate of the will and codicil dated March 6, 1944, which petition was later dismissed when the codicil dated December 4, 1944, was found, and a new petition signed by respondent was filed to include the December 4 codicil. The three instruments were allowed and admitted to probate on August 20, 1946, as one instrument, namely, as the last will of decedent. Respondent admitted that after this hearing appellant, as executor and attorney for the estate, discussed with him certain rights he might have as to personal property and maintenance, even though respondent signed the consent, and suggested that it would be better for respondent to get his own attorney to advise him, which he did.

On September 26, 1946, respondent filed with the probate court a written renunciation of the will, including all three instruments admitted to probate. Part of the grounds upon which this renunciation was based was that respondent never consented to any of the provisions of the instrument dated December 4, 1944, and that the codicil bearing that date revoked, canceled, and altered certain provisions, terms, and conditions of the will and all of the terms and provisions of the codicil dated March 6, 1944, which codicil, he claims, decedent executed in order to induce him to sign the consent referred to herein; also on the ground that he was uninformed as to his rights as surviving spouse and did not know the meaning of

the term "statutory rights" until just before he filed his renunciation.

On October 2, 1946, respondent filed two petitions with the probate court, one to set apart to him the homestead and wearing apparel, certain furniture and household goods, and cash in the sum of $500, and the other for an order allowing him reasonable maintenance during the administration of the estate. At the same time, appellant filed with the probate court a petition for an order setting aside as ineffectual respondent's renunciation of the will. On November 26 of that year, the probate court made three orders, as follows: One setting apart to respondent the homestead and certain personal property; one allowing respondent the sum of $100 per month as maintenance, to be paid to him by the representative from the time of decedent's death and continuing thereafter as provided by law; and one denying appellant's petition to set aside the renunciation as ineffectual. On December 20, appellant appealed to the district court from the orders of the probate court setting apart to respondent the homestead and certain personal property and allowing him $100 per month as maintenance, and on the same date petitioned the district court for a writ of certiorari to review the action of the probate court in denying appellant's petition to set aside the renunciation of the will.

On May 8, 1947, it was stipulated by appellant and respondent that the district court should enter and make an order affirming the order of the probate court allowing the $100 a month maintenance to respondent. Thereafter, on July 9, 1947, the district court made and entered findings of fact and conclusions of law affirming the order of the probate court setting apart to respondent the homestead and certain personal property, and made and entered a final order and decision affirming the order of the probate court denying appellant's petition to set aside the renunciation of the will. Appellant's motions for amended findings, conclusions, and order for judgment, or for a new trial in both cases were denied October 10, 1947, from which orders these appeals were taken.

1. While numerous assignments of error have been raised by appellant, we believe that the vital point upon which these cases must be decided is whether or not there were sufficient changes affecting respondent's rights in the codicil dated December 4, 1944, to justify the renunciation of his consent to the will and codicil dated March 6, 1944, in view of the fact that all three instruments were admitted to probate as the last will and testament of decedent, and that respondent never consented to the codicil dated December 4, 1944. To determine this, we have carefully examined the original will and codicil dated March 6, 1944, and the codicil dated December 4, 1944. As stated, the will of March 6, 1944, provided for a $500 bequest to respondent in lieu of his statutory rights, and the codicil of even date provided that respondent should have such household goods and effects as he may desire, "and when the same have ceased to serve that purpose," they were to go to her sister. What did decedent intend that respondent should have when she made the codicil of March 6, in referring to "such of my household goods and effects"?

In Webb v. Downes, 93 Minn. 457, 460, 101 N. W. 966, 967, this court said:

"* * * Clearly, 'household goods' is a wider term than 'furniture,' including everything about the house that is usually held and enjoyed therewith, and that tends to the comfort and accommodation of the household."

The term "household goods" has been defined in some other jurisdictions as follows:

" 'Household goods,' expressed in a will, will pass everything of a permanent nature that was used or purchased or otherwise acquired by testator for his use." In Matter of Winburn, 139 Misc. 5, 10, 247 N. Y. S. 584, 591.

"* * * The term household goods has been properly held to include such goods as being suitable to the condition and station in life of a person and the way he lives, are used by him in his house-

hold for personal, home or household convenience." Taylor v. Crowe, 122 Ill. App. 518, 526.

"The term 'household goods' is more extensive than the expression 'household furniture,' and as used in wills and offer of railroad to transport such goods at certain rates, means all articles of the household not consumed in their enjoyment, that were used, purchased, or otherwise acquired for owner's house, but not goods in the way of his trade. Peter Schoenhofen Brewing Co. v. Merrion, 67 Ill. App. 123." 19 Wd. & Phr. (Perm. ed.) 718.

It is our opinion that when decedent made the bequest in the codicil of March 6, 1944, giving her husband "such of my household goods and effects as he may desire," she gave him not only the household furniture, but everything else in the house that is usually held and used by the occupants of a house which would lend to the comfort and accommodation of the household. She left it with him to select the things he might desire, with the right to use such selections as long as they served his purpose. There was no limitation made as to the household goods and effects he might select.

"A devise of all the testator's 'household furniture and effects' applies to articles of the same kind—that is, household furniture—and not to personalty generally. Rawlin[g]s v. Jennings, 13 Ves. 38, 44." 19 Wd. & Phr. (Perm. ed.) 717.

"Code, § 3069, providing for the landlord's lien on the goods, furniture, and 'effects' belonging to the tenant, his child, etc., must be construed in connection with goods and furniture, and refers to property ejusdem generis. McKleroy v. Cantey, 11 So. 258, 259, 95 Ala. 295; First Nat. Bank v. Consolidated Electric Light Co., 12 So. 71, 72, 97 Ala. 465." 14 Wd. & Phr. (Perm. ed.) 108.

2. Referring now to the codicil of December 4, 1944, we find that decedent bequeathed to others than her husband many items of a household-goods nature which were given to him under the provisions of the codicil of March 6 and which might have been held and enjoyed by him and might have added to his comfort and accommodation in the operation of his household. For example, she be-

queathed to a sister-in-law considerable silverware, with all linen, napkins, bath towels, pillow cases, and bed sheets. She gave to a niece the twin beds with bedding, rugs, pillows, dishes, glasses, and curtains. She gave to another niece some cash, and apparently she had something else in mind when she said "and same else she want." She also made the statement: "All the furnishes belong to me the relatives shall take *wath* there like and hope there all will satisfiet." If she meant by this statement that the relatives could take whatever part of the furniture they wanted and such a bequest was enforced, it could leave respondent without any of the household goods and effects bequeathed to him in the codicil of March 6, 1944. It is evident to us that the act of decedent in executing the codicil of December 4, 1944, was clearly her own, done without the knowledge or advice of her attorney, and for which she alone was responsible. In making it, she so changed the bequests made to her husband in the codicil of March 6, 1944, as to change the terms of the will and codicil to which he consented.

The trial court found that in making the codicil dated December 4, 1944, and labeled by her as "My Last Will," decedent made 15 substantial changes in the will dated March 6, 1944, by adding thereto five new beneficiaries, making six new bequests, and revoking four bequests, and that she thereby substantially changed the March 6 will and codicil. It further found that respondent did not at any time consent in writing or by election to the testamentary disposition made by decedent of her property under the terms of the instrument dated December 4, 1944. It would clearly seem that if respondent was induced by his wife to consent to the terms of her last will dated March 6, 1944, only after she added the codicil on the same date giving him such household goods and effects as he might desire, it would be unreasonable to say that after signing this consent and relying upon the terms of the codicil he would be prevented from renouncing the will within the time allowed by law upon ascertaining that a subsequent codicil, drawn by decedent herself unbeknown even to her attorney, substantially changed the bequests he relied upon. It is true that he signed the petition for the admission and

allowance of the will, including the codicil of December 4, 1944, and that the same was admitted to probate prior to the time he filed his renunciation. It must be remembered, however, that at the time he signed the petition for allowance of the will and codicils he was a man 80 years of age, and that he claimed he did not know his rights as surviving spouse or the meaning of the term "statutory rights" until after he had signed the petition and later consulted his own attorney. After the will was allowed in probate and upon the suggestion of the executor of the estate, who honorably advised him to consult another attorney as to his rights, respondent then filed his renunciation within the six months allowed by law. See, M. S. A. 525.212.

3. We hold that there were sufficient changes affecting respondent's rights in the codicil made on December 4, 1944, to justify respondent in renouncing the last will and testament of his deceased wife as admitted to probate.

Orders affirmed.

MR. JUSTICE KNUTSON, not having been a member of the court at the time of the argument, took no part in the consideration or decision of this case.