## SECURITY BUILDING & LOAN ASS'N v. WARD.

No. 24902.   Oct. 15, 1935.

Abernathy & Howell, for plaintiff in error.

Leon C. Phillips, J. Walter Long, Jr., and W. A. Ratterree, for defendant in error.

BUSBY, J. This is an appeal from an order of the district court of Okfuskee county discharging a garnishment. The Security Building & Loan Association of Oklahoma City, Okla., a corporation, plaintiff in error herein, was plaintiff and judgment creditor in the trial court, and Jess Ward, the defendant in error herein, was defendant and judgment debtor therein. The parties will be referred to in this opinion in the order of their appearance in the trial court. The Baltimore American Insurance Company was garnishee. The order dissolving the garnishment and discharging the garnishee was made after a hearing on motion of the judgment debtor.

The first question presented relates to the jurisdiction of this court. The defendant contends that this appeal should be dismissed for the reason that the case-made was not served, signed, and settled within the time allowed by statute or within the time allowed by any valid order made by the trial court extending such time.

Under the statutes of the state of Oklahoma a garnishment proceeding is so analogous to an attachment proceeding that it is included within the term attachment as used in the statute (see Berry-Beall Dry Goods Co. v. Adams, 87 Okla. 291, 211 P. 79), and the time within which an appeal may be perfected from an order discharging a garnishment is limited to 30 days. Section 555, O. S. 1931.

The order dissolving the garnishment in this case was made on July 3, 1933. The case-made was served on the 25th day of July, 1933, and signed and settled on the

first day of August, 1933. It was also filed in this court on the date last mentioned. It is thus apparent that the appeal in this case was perfected within the limitation of time prescribed by law.

An examination of the case-made, however, shows that an order extending the time within which to serve and settle the same was not made until the 17th day of July, at which time the order provided that the time should be extended for a period of 30 days from that date, thus extending the time beyond the limitation prescribed by statute within which an appeal should be perfected. On July 20th the trial court made an order correcting and modifying the order of July 17th and shortening the time so as to bring the time allowed for serving, signing, and settling the case-made within the statutory limitation period. The defendant asserts that the order of July 17th was a nullity and void in its entirety because it attempted to extend the time beyond the statutory limitation period for perfecting an appeal and that the order of July 20th was void because it was not made within the period allowed by law or within the time allowed by any previous valid extension order.

The question presented is identical in principle with the question recently decided by this court in the case of Geo. E. Staner v. McGrath, 174 Okla. ___, 51 P. (2d) 795, in which this court announced the following rule of law in paragraps 1 of the syllabus:

"An order which attempts to extend the time for serving, amending, signing or settling a case-made beyond the six months' limitation period allowed by statute for perfecting an appeal is void only in so far as it purports to authorize taking one or more of the necessary steps to perfect an appeal after the expiration of such limitation period. Such order is irregular only in so far as it fails to require that all or some of the necessary steps above referred to be taken within the time authorized by law. The order is subject to correction by subsequent order shortening the time if the subsequent order is made prior to the expiration of the statutory period for perfecting an appeal."

The rule of law thus announced is applicable to the situation presented in the case at bar, except that the limitation period in this character of appeal is 30 days instead of six months. An order that attempts to extend the time in this class of appeals beyond the 30-day limitation period is void only in as far as it purports to authorize the taking of one or more steps necessary to perfect such appeal after the expiration of the 30-day limitation period prescribed by law. Such order is irregular in other respects, but subject to correction by an order made before the expiration of the period of time allowed by statute for perfecting an appeal.

The rule announced in Staner v. McGrath, supra, and applied in this case is in conflict with the case of Exchange Nat. Bank of Ardmore v. Merritt et al., 108 Okla. 184, 235 P. 180; State Exch. Bank of Elk City v. National Bank of Commerce of St. Louis, Mo., et al., 70 Okla. 220, 169 P. 482, and Baxter v. Wilbanks, 156 Okla. 51, 9 P. (2d) 426. Those cases and all other cases in conflict herewith are overruled in so far as they do not harmonize with the views herein announced. We therefore refuse to dismiss this appeal.

This brings us to a consideration of the appeal upon the merits of the controversy, which requires an additional statement of the facts presented by the record. It appears that on or about the 23rd day of August, 1930, the defendant, Jess Ward, was the owner of certain real estate located in the town of Okemah, Okla., upon which there was situated a 12-room house, a portion of which was occupied by him as a dwelling. He was also the owner of the furniture located in the house. The Security Building & Loan Association held a mortgage on the real estate and improvements thereon. On the date last above mentioned the house and the furniture situated therein were destroyed by fire. The building was insured, as well as the furniture, the insurance on the furniture being under a separate policy written by the Baltimore American Insurance Company of New York.

This action was instituted in the district court of Okfuskee county for the purpose of foreclosing the mortgage, and judgment was obtained by the plaintiff on the 16th day of November, 1931, for the amount due under the mortgage in the sum of $3,550.21, together with interest and attorneys' fees. The property was sold to satisfy the mortgage debt and the proceeds of the sale credited on the judgment. The insurance on the building was also paid to the plaintiff and likewise credited on the judgment. The amount thus received was insufficient to satisfy the judgment, leaving a deficiency unpaid and unsatisfied.

Thereafter an execution was issued and returned unsatisfied, and subsequently this garnishment proceeding was instituted on August 3, 1932, for the purpose of causing any amount that might be due on the fire

insurance on the furniture to be applied on the deficiency judgment in favor of the plaintiff.

The garnishee, Baltimore American Insurance Company of New York, a corporation, filed its answer in which it denied that it was liable for any sum whatever to the principal defendant in this action. The plaintiff thereupon took issue with the answer of the garnishee as authorized by section 620, O. S. 1931.

It appears in connection with this garnishment that a dispute existed between the defendant, Jess Ward, and the garnishee as to the liability under the insurance policy and that an independent action had been instituted on March 18, 1931, by the defendant, Jess Ward, as plaintiff, against the garnishee for the purpose of collecting the sum of $2,115 alleged to be due under the fire insurance policy by reason of the destruction of the furniture. This action was pending and undisposed of at the time the garnishment proceedings were instituted.

The defendant, Jess Ward, appeared in the garnishment proceeding and successfully sought the dismissal thereof, the trial court holding, in the order complained of in this appeal, upon the evidence presented that the proceeds of the fire insurance policy on the furniture was not subject to garnishment, assigning as its reason for so holding that "such fund was not due and owing and was subject to a contingency at the time the garnishment interrogatories were served on the garnishee herein."

The garnishment proceeding had not been tried upon the issues framed by the answer of the garnishee and the affidavit of plaintiff taking issue therewith as provided by section 620, O. S. 1931.

The first question to be considered is whether a claim against a fire insurance company arising out of a loss covered by its policy may be garnisheed by a creditor of the insured. The trial court held that such a claim was not subject to garnishment on the theory that it is a contingent liability.

Section 628, O. S. 1931, provides in part as follows:

"From the time of the service of the summons upon the garnishee he shall stand liable to the plaintiff to the amount of the property, moneys, credits and effects in his possession or under his control, belonging to the defendant or in which he shall be interested, to the extent of his right or interest therein, and of all debts due or to become due to the defendant, except such as may be by law exempt from execution * * *"

—and section 629, O. S. 1931, contains the following provisions:

"No judgment shall be rendered upon a liability of the garnishee arising: * * *

"Fourth. By reason of any money or other thing owing from him to the defendant, unless before judgment against the defendant it shall become due absolutely and without depending on any future emergency.

"Judgment may be given for any money or other thing owing, although it has not become payable, in which case the garnishee shall not be required to pay or deliver it before the time appointed by the contract."

The defendant relies upon the fourth subdivision of section 629, supra, and asserts that a claim for an amount due by virtue of a loss covered by a fire insurance policy depends upon a future contingency or emergency and is therefore not subject to garnishment. Our attention is not directed to any previous decision of this court specifically passing upon the question presented. However, the question is one that has been frequently considered by the courts of last resort in other jurisdictions. The decisions of those courts are by no means harmonious and there is a distinct division of authority, especially when the garnishment is attempted before a proper proof of loss has been presented to the insurance company by the insured. The subject is copiously annotated in 38 A. L. R., at page 1072, and the supplemental annotation contained in 53 A. L. R., at page 724.

It should be noted at this point that, since the action to collect the insurance policy was instituted more than one year prior to the garnishment proceeding, the proof of loss, if properly presented or waived, was presented or waived long before the garnishment was instituted. Since the insurance company is not a party to this appeal, and did not participate in the hearing now being reviewed, we cannot properly decide whether a sufficient proof of loss was served, or whether the necessity of such proof of loss was dispensed with by waiver.

The decided weight of authority sustains the power to garnishee such claims, and very respectable authority exists for the garnishment thereof even before a proof of loss has been furnished. See 12 R. C. L., page 804; Clarence I. Finch v. Great Ameri-

can Ins. Co. et al., 101 Conn. 332, 125 Atl. 628, 38 A. L. R. 1068; see, also, annotations mentioned, supra. One view is based upon the theory that the furnishing of a proof of loss is a condition precedent to any liability on the part of the company and that the insurance company's obligation does not arise until such proof of loss has been furnished, and that a contingency therefore exists before proof of loss is served. The other view proceeds upon the theory that, while under the law and the contract between the parties a proof of loss may be essential to an ultimate recovery, such proof of loss is merely one of the steps necessary to be taken before recovery may be had. It is reasoned that the debt is created by the loss which falls within the terms of the policy. It is of course true in connection with claims of this character that other defenses may be asserted under the policy by the insurance company and that the amount of recovery is not definitely ascertained until the claim is adjusted or the litigation is complete. Some courts for similar reasons hold that a contingency exists even after proof of loss has been furnished, if the claim is disputed or unadjusted. These decisions are much weaker than those holding the claim is contingent before proof of loss, and they have no application in this jurisdiction for the reasons hereinafter stated. The liability of the insurance company does not in such cases differ from the liability that may arise under many other and different forms of contract, and frequently the rights of the parties must be adjusted and ascertained by litigation. Notwithstanding the necessity of such litigation, the debt itself in this class of cases arises from the loss incurred, and the determination of liability by subsequent adjustment or litigation merely determines the extent of liability that arose by virtue of the loss previously suffered.

In the case of Finch v. Great American Ins. Co., supra, the Connecticut court, in holding such a claim subject to garnishment, used the following appropriate and applicable language:

"In the standard form of fire insurance policy, the required process of liquidating the loss is minutely specified, with reference to protecting the company against excessive or fraudulent claims; and the filing of proofs of loss by the insured is one step in that process. A failure to do so within the time limited may bar the enforcement of the underwriter's obligation, because it is so agreed in the policy; but the obligation itself is manifestly created by the promise to pay in case of a loss by fire, and by the

happening of that contingency. The steps which the insured is required by the policy to take, before he can collect or sue for the loss, relate to matters the performance of which is exclusively within the volition of the insured. In effect, he is required to furnish a bill of particulars in support of his claim. This is not with a view to creating a debt; on the contrary, the filing of proof of loss necessarily involves the assertion by the insured of the existence of an antecedent debt. So the provisions of the policy requiring the filing of proofs of loss tacitly assume the existence of an obligation to indemnify. The whole procedure after the loss is for the purpose of finding out whether the claimed obligation to indemnify has arisen, and, if so, to ascertain its amount."

Obviously much stronger reasons exist for declaring a claim noncontingent after proof of loss has been furnished.

It is to be noticed in connection with section 628, supra, that it is not essential in order that a claim may be such as may be garnished that it be payable at the time the garnishment is served. Thus a debt which is not yet due is subject to garnishment. See Helms et al. v. State ex rel. Mifflin, 137 Okla. 55, 280 P. 416. Moreover, our garnishment statutes provide the procedure to be followed in case disputed or unadjusted claims are involved, thus clearly indicating that such claims are subject to garnishment.

In contemplation of the possibility that debts subject to garnishment might be the subject-matter of disputes between the defendant debtor and the garnishee, our Legislature has made provision to take care of such situations. Section 630, O. S. 1931, provides:

"No action shall be commenced by the defendant or his assignee against a garnishee upon any claim or demand liable to garnishment, or to recover any property garnished, or execution be issued upon a judgment in favor of defendant against such garnishee subsequent to the service of the garnishee summons upon him, until the termination of the garnishee action; and if an action shall have been commenced or an execution issued, it shall be stayed by the court or a judge thereof, upon the garnishee's application; except that upon cause shown, the court or a judge may by order permit the commencement of such an action, or the issue of an execution, or the further prosecution of one stayed."

It is thus apparent that the provisions of the foregoing statute were made in contemplation of the possibility of a denial

of liability on the part of a garnishee, and the fact that such provisions were made clearly demonstrates the legislative intent that such claims should be subject to garnishment, even though they should be in dispute. The machinery is provided whereby such dispute may be settled and the rights of the garnishee protected in such cases.

Of course, the creditor who is prosecuting a garnishment proceeding cannot claim any greater right against the garnishee than could be asserted and claimed by the debtor against the garnishee. Thus the liability of the insurance company in this case must ultimately be determined on the basis of its liability to the defendant herein, and such liability can neither be created nor enlarged by reason of the fact that this garnishment proceeding has been instituted. Nor can the necessity of proof of loss or waiver thereof be dispensed with by reason of the garnishment proceedings.

The purpose of our garnishment law is to enable creditors to reach the nonexempt property of a debtor and cause the same to be applied in satisfaction of the debtor's just obligations. Our statutes relating to and regulating garnishments should be so construed and applied as to accomplish the purpose of their enactment. The views herein expressed and adopted are consistent with that purpose, and since the decision of the trial court is based upon a theory which is contrary to these views, the order must be vacated, unless it can be sustained on other grounds.

In deciding the question presented in this appeal, we go no further than to hold that disputed or unadjusted claims of the character herein involved are subject to garnishment after proof of loss has been furnished or waived. We have referred to precedent from other jurisdictions which goes further to emphasize the reasoning supporting the views herein announced and illustrate the weakness of the contention that disputed claims of this character are not subject to garnishment.

The defendant asserts that, even though the trial court may have been in error in the reason announced for its ruling, the decision should be upheld on the theory that the furniture destroyed, which constitutes the basis of the claim of defendant against the insurance company, was exempt by law from execution, and that the proceeds of an insurance policy covering a loss of exempt personal property are not subject to garnishment. The plaintiff agrees that, in so far as the property destroyed

was exempt from execution, the claim against the insurance company was not subject to garnishment, but contends that a large portion of the property was not in fact exempt. In this connection it is pointed out that our statute relating to exempt personal property, being section 1642, O. S. 1931, provides in part:

"The following property shall be reserved to the head of every family residing in the state exempt from attachment or execution and every other species of forced sale for the payment of debts, except as hereinafter provided: * * *

"Second. All the household and kitchen furniture."

The plaintiff asserts that this exemption applies only to such household and kitchen furniture as is actually being used by the family, and that it does not apply to such household or kitchen furniture as may be in use for commercial purposes. Basing his argument upon this premise, it is pointed out that the 12-room house in which the furniture involved in this case was situated was divided into three apartments, only one of which was being occupied and used by the defendant as a home for his family, the other two having been until recently preceding the fire rented for the purpose of deriving an income therefrom. In a general way the contention of the plaintiff in this respect is well taken. Household and kitchen furniture protected by the statute is such as may be used by families for the purpose of maintaining a home, and it was manifestly not contemplated by the statute that any and all furniture owned by the head of a family should, by virtue of its character as household furniture, be considered exempt. This precise question does not seem to have been passed upon by this court. However, many other states have similar statutes, and it has been held with practical unanimity that furniture devoted to commercial purposes does not fall within the exemption statute. See Haswell v. Parsons, 15 Cal. 266, 76 Am. Dec. 480; Moore & Hill v. Buckler, 44 App. Cas. (Dist. of Col.) 487; 25 C. J. 42 and 43; see Schoenhofen Brewing Co. v. Merrion, 67 Ill. App. 123; Dodge v. Knight et al. (Tex.) 16 S. W. 626.

However, the actual use of the property at any given time cannot alone be taken as the test in determining its exempt character. Thus, obviously, one who temporarily departed from his home for a short period of time and during that time rented the house furnished would not thereby lose the benefit of the exemption law; and, similarly, as applied particularly to

this case, if the defendant herein temporarily moved some of the furniture which he himself customarily used into other apartments for the purpose of letting tenants use the same, he would not necessarily, by reason thereof, be deprived of the benefits of the exemption law with respect to the particular furniture thus moved.

The purposes of the exemption statute are to prevent improvident debtors from becoming subjects of charity by preserving to them sufficient definitely classified property that they may maintain a home for themselves and to prevent inconsiderate creditors from depriving them of the necessities of life. It is the duty of the court to so apply these exemption statutes as to accomplish these purposes. In connection with the particular subdivision of the statute now under consideration, the trial court, in determining what particular items of property fall within the exemption contemplated by the statute, is not limited to a consideration of their actual use at the time of the fire. It may include within the property so classified such items of furniture, in addition to the items actually used at the time of the fire for household purposes by the defendant in this case, such additional items as may have been temporarily located in other apartments in the house, or such additional items as may appear to the court to be reasonably necessary to furnish a suitable home in which the defendant might maintain his family. See Clark v. Averill, 31 Vt. 512, 76 Am. Dec. 131; Montague v. Richardson, 24 Conn. 338. 63 Am. Dec. 173.

While we do not approve all of the language used in the foregoing decisions from other jurisdictions, we conclude, upon consideration thereof in connection with our own statute, that the household and kitchen furniture of the head of a family who is a resident of this state, which is being used for maintaining the home or which is intended to be so used and reasonably necessary for such use, is exempt by law from levy on execution or attachment.

It appears, however, that, even under this liberal rule, we cannot sustain the decision of the trial court, for it is apparent from the record that other apartments were furnished, in part, at least, by articles of furniture which were duplicates of the articles contained in the apartment occupied by the defendant herein. To illustrate, there are three dining room sets and three kitchen stoves. Thus it will be necessary to reverse this case with directions to proceed in accord with the views herein expressed. It will be essential in the subsequent proceeding in connection with this matter that the amount for which the insurance company is liable to the defendant, Jess Ward, be ascertained, and that the property covered by the insurance policy be classified with reference to its exempt character; that the value of the property thus covered which was exempt be determined separately from the value of the property destroyed which was not exempt, and that the amount of recovery be divided between the parties to this proceeding in proportion to the value of the exempt and nonexempt property; provided, of course, that the judgment creditor herein shall not receive any more than the amount due under its judgment.

The cause is reversed and remanded.

McNEILL, C. J., and RILEY, BUSBY, PHELPS, and GIBSON, JJ., concur.