**In re Dan Henry McKASKLE, Debtor.**

**Bankruptcy No. 89–01615–W.**

United States Bankruptcy Court, N.D. Oklahoma.

Aug. 8, 1990.

Thomas H. Wagenblast, Tulsa, Okl., for debtor.

Jack Martin, Tulsa, Okl., for creditor, Blazer Finance.

### ORDER GRANTING IN PART AND DENYING IN PART DEBTOR'S "MOTION SEEKING AVOIDANCE OF LIEN"

MICKEY DAN WILSON, Chief Judge.

After hearing on motion to avoid lien under 11 U.S.C. § 522(f) and objection thereto, the matter was taken under advisement. Upon consideration of evidence introduced and received, of statements and arguments of counsel, and of the record herein, the Court, pursuant to Bankruptcy Rules 7052 and 9014, finds, concludes, and orders as follows.

### FINDINGS OF FACT

On June 6, 1989, Dan Henry McKaskle ("McKaskle;" "debtor") filed his voluntary petition for relief under 11 U.S.C. Chapter 7 in this Court. With his petition, McKaskle filed his Statement of Financial Affairs, whose ¶ 1c reports his present address as "100 Center Plaza # 1003, Tulsa, Oklahoma 74119;" his Schedule A–2 reporting his

ownership of unspecified "Consumer goods" valued at $900 securing a debt of $2,900 owed to Blazer Finance ("Blazer"); his Schedule B–2 reporting his ownership of "Household goods, supplies and furnishings" valued at $4,000; and his Schedule B–4 claiming unspecified "Household goods, supplies, and furnishings" valued at $4,000 as exempt from his bankruptcy estate pursuant to 11 U.S.C. § 522(b), (*l*) and Bankruptcy Rules 1007, 4004(a).

A meeting of creditors pursuant to 11 U.S.C. § 341 was held on July 17, 1989. No objection to McKaskle's claims of exemption was filed within thirty (30) days thereafter; nor has any formal objection to claims of exemption been filed in this case at any time.

On August 30, 1989, McKaskle filed his "Motion Seeking Avoidance of Lien" pursuant to 11 U.S.C. § 522(f) "... to avoid a nonpossessory, non-purchase money security interest" of Blazer "in 3 televisions, 1 VCR, 1 Stereo, 1 lawnmower, 1 hedgetrimmer, 2 speakers, 1 phonograph, 1 video game system, 1 calculator, and 3 antiques (chair, dresser, and mirror)." On September 14, 1989, Blazer filed its "Objection ..." thereto, wherein Blazer "stipulates that it has a non-purchase money security interest in" all of the items listed in the motion, but argues that the items should be held "non-exemptible," save that "the television has become such an integral part of American households that the Creditor would not contest one television exemption." Blazer's objection incorporates a brief and appends certain exhibits.

Hearings were held on September 28, 1989 and October 13, 1989, whereat the Court received evidence including Blazer's exhibit 1 and certain statements regarding the circumstances of McKaskle's acquisition of the 3 antiques, and heard statements of fact by and arguments of counsel. On October 10, 1989, McKaskle filed his "Brief in Support of Motion Seeking Avoidance of Lien," which among other things pointed out that one of the antique items, described as a "chair," was actually a table. After the hearing on October 13, 1989, the Court took the matter under advisement.

Any "Conclusions of Law" which ought more properly to be "Findings of Fact" are adopted and incorporated herein by reference.

CONCLUSIONS OF LAW

This is a core proceeding under 28 U.S.C. § 157(b)(2)(B), (K), (O), 11 U.S.C. § 522(b), (f)(2).

■ Debtor moves to avoid liens under 11 U.S.C. § 522(f)(2). A prerequisite for lien avoidance under this subsection is that the collateral be exempt property. Here, Blazer argues that its collateral is not or should not be exempt. Yet Blazer filed no objection to McKaskle's claim of exemption within thirty days after the meeting of creditors as required by Bankruptcy Rule 4003(b); nor did Blazer file its objection to lien avoidance indirectly raising the issue of exemptability within said period. Therefore, the property is already exempt by operation of law, 11 U.S.C. § 522(*l*). However, Blazer's failure to object to McKaskle's claims of exemption earlier in the case is excusable. Absent lien avoidance under 11 U.S.C. § 522(f), Blazer's lien is enforceable upon this collateral even if the collateral is exempt, *Keist v. Cross*, 118 Okl. 142, 247 P. 85 (Okl.1926). So, if McKaskle filed no motion to avoid lien, Blazer would have no reason to object to exemption. Indeed, Blazer might approve of exemption, as a means of taking its collateral out of the bankruptcy estate without need of filing a motion for relief from stay and/or abandonment, see 11 U.S.C. § 362(c)(1), § 522(b), § 554. McKaskle did not signal his intentions to Blazer by filing his motion to avoid lien until after the deadline for objecting to exemptions had already expired. Under these circumstances, the Court considers the issue of exemption closed for purposes of taking the property out of the estate, but still open for purposes of determining the propriety of lien avoidance. For comparable treatment of interdependent claims of exemption, see *In re Cass*, 104 B.R. 382, 386 (Bkrtcy.N.D.Okl. 1989). Accordingly, the Court first consid-

ers whether the items of collateral are properly exemptible.

Debtor may claim exemptions under Oklahoma law applicable on the date debtor filed his petition in bankruptcy, 11 U.S.C. § 522(b)(2)(A), 31 O.S. § 1(B). McKaskle claims all of the items in question as exempt under 31 O.S. § 1(A)(3), which exempts "All household and kitchen furniture held primarily for the personal, family or household use of [debtor] or a dependent of [debtor] . . ."

■■ Oklahoma's exemption statutes are to be liberally construed, *Nelson v. Fightmaster*, 4 Okl. 38, 44 P. 213 (Okl. 1896). This does not mean they must be stretched as far as possible in favor of debtors. *Nelson* itself denied the requested exemption in part; and all Oklahoma statutes are to be "liberally construed," 12 O.S. § 2, 25 O.S. § 29, which surely does not mean that all Oklahoma statutes are to be stretched as far as they will go. The rule of "liberal construction" merely means that statutes shall be interpreted and applied sensibly rather than literally, with due regard for legislative purpose, *Black's Law Dictionary* (5th ed. 1979) "Construction," "Interpretation." Liberal construction reads and applies a statute in furtherance of the legislative purpose, whether that purpose be generous or restrictive. It is often said that, in determining whether property should be exempt, any doubt should be resolved in favor of exemption; see e.g. *In re Fisher*, 11 B.R. 666 (Bkrtcy. W.D.Okl.1981) at p. 668, citing *Nelson v. Fightmaster*, supra, and *Phelan v. Lacey*, 51 Okl. 393, 151 P. 1070 (Okl.1915). But this benefit-of-doubt rule encouraging broad application of exemption statutes was merely announced as dicta in *Nelson v. Fightmaster* and *Phelan v. Lacey;* in *Hoyt v. Pullman*, 51 Okl. 717, 152 P. 386 (Okl. 1915), it was invoked and actually applied only as to "minor items," 51 Okl. p. 722, 152 P. 386. Generally, "Oklahoma case law has construed and applied exemptions in a reasonably limited manner," *In re Helmuth*, 92 B.R. 494, 498 (Bkrtcy.N.D.Okl. 1988).

■ In *Cook v. Fuller*, 35 Okl. 339, 130 P. 140 (Okl.1913), the Oklahoma Supreme Court was asked "whether a piano is included within the term of 'all household and kitchen furniture,'" *id.* 35 Okl. p. 340, 130 P. 140, and answered in the affirmative. No facts of the case at bar are stated; the rule of the case seems to be that a piano is "furniture" and is exempt as a matter of law merely by virtue of its character as "furniture." If that is the rule of *Cook v. Fuller*, it was limited, if not implicitly overruled, by *Security Building & Loan Ass'n v. Ward*, 174 Okl. 238, 50 P.2d 651 (Okl.1935), wherein the Oklahoma Supreme Court declared,

. . . Household and kitchen furniture protected by the statute is such as may be used by families for the purpose of maintaining a home, and it was manifestly not contemplated by the statute that any and all furniture owned by the head of a family should, by virtue of its character as household furniture, be considered exempt . . .

The purposes of the exemption statute are to prevent improvident debtors from becoming subjects of charity by preserving to them sufficient definitely classified property that they may maintain a home for themselves and to prevent inconsiderate creditors from depriving them of the necessities of life. It is the duty of the court to so apply these exemption statutes as to accomplish those purposes. In connection with the particular subdivision of the statute now under consideration, the trial court . . . may include within the property so classified such items of furniture . . . or such additional items as may appear to the court to be reasonably necessary to furnish a suitable home in which the [debtor] might maintain his family . . .

. . . [W]e conclude . . . that the household and kitchen furniture . . . which is being used for maintaining the home or which is intended to be so used and reasonably necessary for such use, is exempt by law from levy on execution or attachment,

*id.* 174 Okl. pp. 242–243, 50 P.2d 651. Thus, even if an item is prima facie within

the exemption statute "by virtue of its character as household furniture," it is properly exempt only if, in addition, it "is being used for maintaining the home or ... is intended to be so used and reasonably necessary for such use." The Oklahoma Supreme Court called this a "liberal rule," *id.* 174 Okl. p. 243, 50 P.2d 651, although it is narrower than the literal statutory exemption of "*All* the household and kitchen furniture" (emphasis added). In 1984, 31 O.S. § 1(A)(3) was amended to provide that household and kitchen furniture be "held primarily for the personal, family or household use of [debtor] or a dependent of [debtor]." This amendment does not appear to expand the exemption statute beyond its pre–1984 limits. Therefore, the rule of *Security Building & Loan Ass'n v. Ward,* supra, remains valid: items are exempt if they are of the character of "household or kitchen furniture" and if they are used or are intended to be used as such and are reasonably necessary for such use.

McKaskle cites *Commercial Casualty Ins. Co. of Newark, New Jersey v. Adkisson,* 152 Okl. 216, 4 P.2d 50 (Okl.1931) and *Swisher v. Clark,* 202 Okl. 25, 209 P.2d 880 (1949) for the proposition "that in Oklahoma 'furniture' means 'furnishings,'" McKaskle's brief p. 3. The *Commercial Casualty* case actually held that an insurance policy covering death "in consequence of the burning of any hotel while the insured is therein" included within its coverage death in consequence of a fire which burned the contents of a hotel room without consuming the walls of the building itself. The opinion casually uses the phrase "furniture and fixtures" in reference to the general contents of the hotel room, but never discusses the meaning of "furniture" as opposed to "furnishings." Nevertheless, the case was later cited in *Swisher v. Clark* as authority for the statement that "in our jurisdiction" those two terms "are synonymous" even though such usage "is not the best English," 209 P.2d p. 886. *Swisher v. Clark* actually held that, in a contract for sale of realty, the contractual term "furnishings" *included* "furniture;" and with such holding there is no reason to disagree. Neither case concerns

exemptions. This Court does not believe that the intended scope of the Oklahoma Legislature's exemption statutes can be enlarged or in any way affected by the Oklahoma Supreme Court's use of a single word in its opinion on a contract case. McKaskle further offers a dictionary definition of "furnishing" as "an object that tends to increase comfort or utility," McKaskle's brief p. 3 citing *The New Lexicon Webster's Dictionary of the English Language* 499 (Deluxe Encyclopedic Ed.1987). The definition is broad enough to include virtually anything of any use inside a home; but the statute says "furniture," not "furnishings," and "furniture" may have a more restricted meaning, see *In re Miller,* 101 B.R. 713, 716 (Bkrtcy.E.D.Okl.1989). In any event, the focus of the inquiry is not upon dictionary definitions but upon whether an item is reasonably necessary for maintaining the home.

Where exemption and lien avoidance issues are combined, it is somewhat difficult to allocate the burden of proof, which would seem to be on the creditor as to exemption, Bankruptcy Rule 4003(c), and on the debtor-movant as to lien avoidance.

It is convenient to group the items of property concerned herein into three categories: (1) the lawnmower and hedgetrimmer; (2) the antiques; and (3) the electronic hardware.

█ Lawnmowers and hedgetrimmers are not "furniture" within the common, reasonable meaning of the term. They are not claimed exempt under any other category of exemption. Moreover, in this case McKaskle's present address indicates that he lives in an apartment, so that no matter what category of property a lawnmower and hedgetrimmer might be, they appear to be of no use to him whatever. Under these circumstances, the lawnmower and hedgetrimmer should not be exempt.

█ The antiques consist of a table, dresser and mirror. These items are "furniture" within the common, reasonable meaning of the term. Such items may be obtained and held as investments, and in such case would not be "held primarily for

personal, family or household use" and would not be exempt, see *In re Reid: First Bank of Catoosa v. Reid,* 757 F.2d 230 (10th Cir.1985). However, in this case the value of the items is not especially great; there is no evidence that they were obtained in payment of business debts and systematically offered as collateral for loans, including business loans, as in *In re Reid,* supra; the items appear to be functional despite their age; and there is evidence that McKaskle obtained the items for the personal pleasure they afforded him. The Court concludes that under these circumstances, McKaskle's antique table, dresser and mirror should be exempt.

■ As to the electronic equipment, none of it is "furniture" within the common, reasonable meaning of the term—thus, no one reasonably expects a "furnished" apartment to be provided with TV, VCR, video game system, stereo equipment, and calculator; nor are such items usually sold in "furniture" stores unless built into special cabinetry which itself is offered for sale. As noted above, however, the focus of the inquiry is not on categorical definitions but on whether particular items are reasonably necessary for maintaining the home. Blazer concedes that "the television has become such an integral part of American households that [Blazer] would not contest one television exemption," Blazer's objection p. 2. For an interesting discussion of the place of television in "the maintenance of a home" in modern America, see *In re Fisher,* supra, 11 B.R. pp. 668–669. This Court does determine that if one TV is already allowed, no reason appears why *more* than one TV should be considered "reasonably necessary for maintaining the home." All of the other items of electronic equipment, save one, are mere entertainment devices, enjoyable but not at all necessary; the calculator may serve a utilitarian purpose, but nothing shows what reasonably necessary and appropriate function it serves in maintaining McKaskle's home. The Court concludes that one TV set should be exempt, as conceded by Blazer; but that the other two TV sets and the other items of electronic equipment are not reasonably necessary to maintenance of

McKaskle's home, and so should not be exempt.

*In re Fisher,* supra, appears to exempt a stereo merely by analogy with the piano in *Cook v. Fuller,* supra, plus the benefit-of-doubt dictum in *Nelson v. Fightmaster,* supra, and *Phelan v. Lacey,* supra. In so doing, *In re Fisher* appears to ignore the limitation of *Cook v. Fuller* by *Security Building & Loan Ass'n v. Ward,* supra, and the actual application of the benefit-of-doubt rule only to "minor items" in *Hoyt v. Pullman,* supra. To that extent, *In re Fisher* is not followed by this Court.

In accord with this Court's present decision is *In re Michalak,* 101 B.R. 276 (W.D. Okl.1988); and see *In re Reid: First Bank of Catoosa v. Reid,* supra, 757 F.2d p. 233 n. 4 (dicta), p. 236. A similar result is also reached in *In re Miller,* supra, although the Court in that case took a "literal" approach to statutory interpretation, 101 B.R. pp. 715–716, which appears to slight 12 O.S. § 2 and 25 O.S. § 29. It seems that, under both liberal and literal theories of statutory interpretation, 31 O.S. § 1(A)(3) does not require exemption of items such as stereo equipment, video equipment, and lawnmowers.

Since the lawnmower, hedgetrimmer, two TVs and other electronic equipment are not properly exemptible, Blazer's lien on them cannot be avoided pursuant to 11 U.S.C. § 522(f)(2). The question remains whether Blazer's lien on the exempt antiques and TV set may be so avoided.

■ 11 U.S.C. § 522(f)(2) allows avoidance of nonpossessory, non-purchase money liens on exempt property of certain specified types, including "(A) household furnishings, household goods ... that are held primarily for the personal, family, or household use of the debtor or a dependent of the debtor." Blazer concedes that its lien is of nonpossessory, non-purchase money type. The terms "furnishings" and "goods" might include a very wide range of items—here, McKaskle's dictionary definition of "furnishings" is material. The lien avoidance statute's purpose and intended application is far narrower than the

Oklahoma exemption statutes themselves; but the Court of Appeals of this Circuit has not recognized Congressional intent as limiting the operation of § 522(f)(2), see *In re Helmuth*, supra, discussing *In re Liming*, 797 F.2d 895 (10th Cir.1986). Since the antiques and TV are exempt, are within the terms "household furnishings" or "household goods" and are "held primarily for the personal, family, or household use of the debtor," Blazer's lien on them may be avoided pursuant to 11 U.S.C. § 522(f)(2)(A).

Accordingly, McKaskle's "Motion Seeking Avoidance of Lien" is granted as to one TV set which shall be elected by McKaskle within ten (10) days of the date of entry of this order, and as to the antique table, dresser, and mirror; but is denied as to the lawnmower and hedgetrimmer, the other two TV sets, the VCR, stereo, speakers, phonograph, video game system, and calculator.

AND IT IS SO ORDERED.