OSCN Found Document:IN RE: ADAMS

 

 
 

 
 IN RE: ADAMS
2020 OK 80
Case Number: 118735
Decided: 09/29/2020
THE SUPREME COURT OF THE STATE OF OKLAHOMA
Cite as: 2020 OK 80, __ P.3d __

 
NOTICE: THIS OPINION HAS NOT BEEN RELEASED FOR PUBLICATION. UNTIL RELEASED, IT IS SUBJECT TO REVISION OR WITHDRAWAL. 

In re: EDDIE JOE ADAMS, Debtor.
CERTIFIED QUESTION FROM THE UNITED STATES 
BANKRUPTCY COURT FOR THE WESTERN DISTRICT OF OKLAHOMA 
Â¶0 The United States Bankruptcy Court for the Western District of Oklahoma certified a question of state law to this Court pursuant to the Revised Uniform Certification of Questions of Law Act, 20 O.S.2011, Â§Â§ 1601-1611.
CERTIFIED QUESTION ANSWERED
Michael J. Rose, Michael J. Rose PC, Oklahoma City, Oklahoma, for Debtor Eddie Adams.
Susan Manchester, Oklahoma City, Oklahoma, for Appellee Susan Manchester.
WINCHESTER, J.
Â¶1 The United States Bankruptcy Court for the Western District of Oklahoma certified to this Court the following question of law:
Is compensation exempt under 31 O.S.2011, Â§ 1(A)(20) when the compensation was structured to meet the requirements for tax deferred treatment provided by Internal Revenue Code Section 409A (26 U.S.C. Â§ 409A (2018))?[1] 
Â¶2 We answer no and hold the deferred compensation bonus at issue is not a "retirement plan or arrangement qualified for tax exemption or deferment purposes" as required to be exempt under 31 O.S.2011, Â§ 1(A)(20).
CERTIFIED FACTS AND PROCEDURAL HISTORY
Â¶3 The bankruptcy court's certification order sets out the underlying facts of this case. When answering a certified question, this Court will not presume facts outside those presented by the certification order itself. Gov't Emps. Ins. Co. v. Quine, 2011 OK 88, Â¶ 14, 264 P.3d 1245, 1249. That is, "our examination is confined to resolving legal issues." Id. We remain free, however, to "consider uncontested facts supported by the record." Siloam Springs Hotel, LLC v. Century Sur. Co., 2017 OK 14, Â¶ 2, 392 P.3d 262, 263.
Â¶4 Boardman, LLC, a custom heavy metal fabricator, employed Debtor Eddie Joe Adams (Adams) as a sales representative for approximately 33 years. Adams and his employer entered into an Employment Agreement on January 1, 2013 (Original Agreement). The Original Agreement covered a period of ten years (until January 1, 2023) and compensated Adams through regular salary, bonuses, and severance. On January 1, 2014, Adams and his employer entered into the First Amendment to the Original Agreement (First Amendment) that included an additional performance incentive in the form of a "Deferred Bonus."
[2]
Â¶5 On June 16, 2017, Adams and his employer executed an Amended and Restated Employment Agreement (Restated Agreement), which had a term until January 1, 2020. The preamble to the Restated Agreement provided:
(b) The parties desire to enter into this Agreement in order to: (i) modify the terms of Adams' ordinary, non-deferred compensation subsequent to the Effective Date; (ii) make certain corrections under Internal Revenue Service Notice 2010-6, sections IV, VII.C and VII.D to the deferred compensation provided for in the Prior Employment Agreement to ensure that all of such deferred compensation complies with (or remains exempt from) section 409A of the Code; (iii) to further modify the Deferred Bonus by freezing it and eliminating future Annual Value Increases; and (iv) for the avoidance of doubt; to clarify that (x) the phantom unit referenced in the Original Employment Agreement was never adopted by the Company, and Adams never became a participant of or otherwise entitled to payment under any such plan; and (y) the amount of Annual Value Increase for any fiscal year of the Company in which the Company experienced a net loss was, and was originally intended to be, zero ($0.00).
Â¶6 The pertinent bonus provisions of the Restated Agreement (the Deferred Bonus) were as follows:
3.3 Deferred Bonus.
(a) Deferred Bonus Described. Pursuant to the Prior Employment Agreement, Adams had the opportunity to earn a deferred bonus from the Company initially equal, on January 1, 2014, to $100,000.00 (the "Initial Value") vesting at a rate of twenty percent (20%) per year over a five year vesting period (the "Deferred Bonus"). The vesting schedule provided by the Prior Employment Agreement was as follows (the "Vesting Schedule"):

Vesting Date

Current Vesting Percentage

Total Vested

January 1, 2015

20%

20%

January 1, 2016

20%

40%

January 1, 2017

20%

60%

January 1, 2018

20%

80%

January 1, 2019

20%

100%

Â¶
7 The Restated Agreement modified the Deferred Bonus as follows:
(c) Modification of Deferred Bonus. As of the Effective Date, the Company and Adams hereby agree that Adams remains entitled to earn and be paid the Deferred Bonus as provided for in the Prior Employment Agreement, subject to the modifications thereof set forth in this Agreement. Such modifications are intended to ensure that the Deferred Bonus complies with section 409A of the Code. The Deferred Bonus shall vest as set forth in Section 3.3(a) above; in other words, on the same Vesting Schedule as was provided for in the Prior Employment Agreement. The Company and Adams acknowledge and agree that, as of the Effective Date, Adams has vested in sixty percent (60%) of the Deferred Bonus and forty percent (40%) of the Deferred Bonus remains unvested. The Company and Adams acknowledge and agree that: (i) as adjusted for Annual Value Increases through the end of 2016, the amount of the Deferred Bonus is One Hundred Eighty-One Thousand Eight Hundred Twenty-Five Dollars and No Cents ($181,825.00); and (ii) no further Annual Value Increases shall be calculated or added to the Deferred Bonus.
. . . 
(e) Time and Form of Payment of Deferred Bonus. Subject to Section 3.3(d)(i) hereof, that portion of the Deferred Bonus which has vested and which remains unforfeited as of the Distribution Commencement Date shall be paid to Adams (or his estate) in the form of five equal annual installments, together with interest at the Applicable Federal Rate on the entire unpaid vested portion of the Deferred Bonus calculated from January 1, 2019 through each payment date. The initial such payment shall be made on January 1, 2020 (the "Payment Commencement Date"), with the remaining payments made on January 1, 2021, January 1, 2022, January 1, 2023 and January 1, 2024. 
Â¶8 On January 1, 2019, the Deferred Bonus fully vested, and on October 31, 2019, Adams filed his voluntary chapter 7 bankruptcy petition. Boardman, LLC did not renew the Restated Agreement, and it expired on January 1, 2020. Adams received his first payment of $41,634.14, less withholding tax, under the Deferred Bonus on January 2, 2020.[3]
Â¶9 In his bankruptcy filings, Adams claimed the Deferred Bonus in the amount of $197,623.78 (payable over 5 years) exempt under 31 O.S.2011, Â§ 1(A)(20).[4] Trustee Susan Manchester (Trustee) objected to the exemption claimed by Adams. The question certified to this Court by the United States Bankruptcy Court for the Western District of Oklahoma is whether the Deferred Bonus is exempt under 31 O.S.2011, Â§ 1(A)(20) (hereafter Subsection 20). This is a question of first impression in a matter that offers "no controlling Oklahoma precedent." Barrios v. Haskell Cty. Pub. Facilities Auth., 2018 OK 90, Â¶ 6 n.6, 432 P.3d 233, 236 n.6.
ANALYSIS
Â¶10 Under the Bankruptcy Code, a debtor must include in the bankruptcy estate virtually all property that a debtor has a legal or equitable interest in at the commencement of the case. See 11 U.S.C. Â§ 541 (2019). However, a debtor may claim certain property exempt from the estate. Id. The Code allows states to establish separate exemption lists. A debtor may choose either the federal exemption provisions or the state provisions unless a debtor resides in a state that has "opted out" of the federal exemption list. See 11 U.S.C. Â§ 522(b)(1) (2019). In states that have "opted out," debtors are limited to the state exemption list. Oklahoma has "opted out." See 31 O.S.2011, Â§ 1(B). Therefore, Oklahoma bankruptcy debtors are limited to the Oklahoma exemptions. See 31 O.S.2011, Â§ 1(A).
Â¶11 We must then examine Oklahoma's exemption statute to decide whether the Deferred Bonus structured to meet the requirements for tax deferred treatment provided by Internal Revenue Code (I.R.C.) Section 409A is exempt. When the Court examines a statute, our primary goal is to determine legislative intent through the "plain and ordinary meaning" of the statutory language. In re Initiative Petition No. 397, 2014 OK 23, Â¶ 9, 326 P.3d 496, 501. Because the Legislature expresses its purpose by words, the plain meaning of a statute is deemed to express legislative authorial intent in the absence of any ambiguous or conflicting language. Id.
Â¶12 Oklahoma's exemption statute states in pertinent part:
A. Except as otherwise provided in this title and notwithstanding subsection B of this section, the following property shall be reserved to every person residing in the state, exempt from attachment or execution and every other species of forced sale for the payment of debts, except as herein provided:
. . . 
20. Subject to the Uniform Fraudulent Transfer Act, Section 112 et seq. of Title 24 of the Oklahoma Statutes, any interest in a retirement plan or arrangement qualified for tax exemption or deferment purposes under present or future Acts of Congress; provided, any transfer or rollover contribution between retirement plans or arrangements which avoids current federal income taxation shall not be deemed a transfer which is fraudulent as to a creditor under the Uniform Fraudulent Transfer Act. "Retirement plan or arrangement qualified for tax exemption purposes" shall include without limitation, trusts, custodial accounts, insurance, annuity contracts and other properties and rights constituting a part thereof. By way of example and not by limitation, retirement plans or arrangements qualified for tax exemption or deferment purposes permitted under present Acts of Congress include defined contribution plans and defined benefit plans as defined under the Internal Revenue Code ("IRC"), individual retirement accounts, individual retirement annuities, simplified employee pension plans, Keogh plans, IRC. Section 403(a) annuity plans, IRC Section 403(b) annuities, Roth individual retirement accounts created pursuant to IRC Section 408A, educational individual retirement accounts created pursuant to IRC Section 530 and eligible state deferred compensation plans governed under IRC Section 457. This provision shall be in addition to and not a limitation of any other provision of the Oklahoma Statutes which grants an exemption from attachment or execution and every other species of forced sale for the payment of debts. This provision shall be effective for retirement plans and arrangements in existence on, or created after April 16, 1987[.]
31 O.S.2011, Â§ 1(A)(20) (emphasis added).
Â¶13 Oklahoma's exemption statute seeks "to prevent improvident debtors from becoming subjects of charity" by excluding "classified property" like a home or other life "necessities." Sec. Bldg. & Loan Ass'n v. Ward, 1935 OK 996, Â¶ 32, 50 P.2d 651, 657. Generally, Oklahoma case law has construed and applied the exemptions in a reasonably limited matter. See In re McKaskle, 117 B.R. 671, 674 (Bankr. N.D. Okla. 1990).
Â¶14 In determining whether the Deferred Bonus is exempt under Subsection 20, we must resolve whether the Deferred Bonus is (1) a retirement plan or arrangement and (2) qualified for tax exemption or deferment purposes. We address each in turn.
A. Retirement Plan or Arrangement.
Â¶15 Subsection 20 specifically exempts any interest in a "retirement plan or arrangement." The term "retirement" consistently modifies the phrase "plan or arrangement" each of the three times the Legislature used the phrase in Subsection 20. The logical conclusion based on the plain language of the statute is that every interest exempt under Subsection 20 must be a plan or arrangement designated for retirement purposes. The Tenth Circuit Court of Appeals previously supported this conclusion when it held Subsection 20 represents a rational policy choice in favor of debtor retirement funds. See In re Walker, 959 F.2d 894, 900 (10th Cir. 1992). The United States Bankruptcy Court for the Northern District of Oklahoma also concluded the intent of the Legislature in exempting retirement accounts is to allow debtors to preserve assets that they have earmarked for retirement in the ordinary course of the debtor's affairs. In re Sims, 241 B.R. 467, 471 (Bankr. N.D. Okla. 1999). The reasoning of these federal courts tracks our holding in Security Building & Loan Association v. Ward, 1935 OK 996, Â¶ 32, 50 P.2d 651, 657.
Â¶16 Similarly, the United States Bankruptcy Court for the Northern District of Oklahoma in In re Gee, 124 B.R. 581 (Bankr. N.D. Okla. 1991), addressed whether an annuity from the debtor's employer as a result of a sales bonus was exempt pursuant to 31 O.S.1987, Â§ 1(A)(20) (superceded 1998). Id. at 582-83. The bankruptcy court held that the annuity was not a "retirement plan" as contemplated under Subsection 20. Specifically, the bankruptcy court reasoned:
But this annuity is not a "retirement plan" any more than it is "wages." Debtor has a right to receive the payments even though he has not yet retired; he enjoys the right whether he retires or not; and the right was never offered to employees at large for purposes of retirement, but to a select few employees as a reward for salesmanship.
Id. at 586; see also In re Cella, 128 B.R. 574, 578 (Bankr. W.D. Okla. 1991) (holding Subsection 20 is intended to apply only to retirement funds). In accordance with these persuasive federal court opinions and Security Building & Loan Association v. Ward, 1935 OK 996, Â¶ 32, 50 P.2d 651, 657, we conclude for Subsection 20 to apply, the plan or arrangement must be for retirement.[5]
Â¶17 The next question becomes whether the Deferred Bonus is a "retirement plan or arrangement." Subsection 20 lists "by way of example and not by limitation" several retirement plans or arrangements that are exempt. An I.R.C. Section 409A plan, like the Deferred Bonus, is not listed. The stated examples are particularly helpful in determining the legislative intent as to what plans or arrangements are exempt. The majority of the retirement vehicles listed in Subsection 20 involve a trade-off: individuals invest their money with certain advantageous tax benefits in the future but must forfeit access to the money until retirement or face significant penalties for withdrawals or surrenders.[6] These plans or arrangements protect funds that a plan participant will rely upon for retirement. 
Â¶18 The Section 409A Deferred Bonus does not share these characteristics. Section 409A applies to "nonqualified deferred compensation," which it defines very broadly, and includes a present legally enforceable right to taxable compensation for services that will be paid in a later year. See 26 U.S.C. Â§ 409A (2018).
[7] The Deferred Bonus vested five years after the execution of the original Employment Agreement. The Restated Agreement specified that Adams would receive payments on January 1st of the subsequent five years (2020, 2021, 2022, 2023, and 2024). Payment of the deferred bonus was not designated for retirement purposes, and once received, the Deferred Bonus could be used for any purpose. The Deferred Bonus is more akin to the annuity in In re Gee: a short term investment vehicle that Adams used to increase his earnings not offered to employees at large for purposes of retirement. See In re Gee, 124 B.R. at 586. Holding such a plan or arrangement exempt does not fulfill the legislative intent of Oklahoma's exemption statute--to provide a debtor with the "necessities" of life. Sec. Bldg. & Loan Ass'n, 1935 OK 996, Â¶ 32, 50 P.2d at 657.
Â¶19 Further, a Section 409A Deferred Bonus does not enjoy the same kind of fiduciary relationship between the employer and employee as other retirement plans. The whole structure of the Section 409A Deferred Bonus is that of a debtor-creditor, giving rise to contractual claims in the event of a breach, not that of a fiduciary and its beneficiary. See supra Restated Agreement, Section 3.3.
[8] 
Â¶20 We, therefore, hold that Subsection 20 exempts only those plans or arrangements designated for retirement, and the Section 409A Deferred Bonus does not meet the characteristics of a retirement plan or arrangement.
B. Qualified for Tax Exemption or Deferment Purposes. 
Â¶21 A retirement plan or arrangement must also be "qualified for tax exemption or deferment purposes" for it to be exempt under Subsection 20. Even if this Court held the Deferred Bonus is a retirement plan or arrangement, it would not be exempt because a Section 409A plan is not a "qualified employer plan" for tax deferral purposes.
Â¶22 In the context of employer retirement plans and arrangements, "qualified" has a specific meaning. For a plan to "qualify" under the provisions of the I.R.C., it must comply with the provisions of I.R.C. Section 401. See e.g., 26 U.S.C. Â§ 401(a) (2020) ("Requirements for qualification"); 26 U.S.C. Â§ 401(k)(2) (2020) ("Qualified cash or deferred arrangement"). Section 409A deferred compensation plans, like the Deferred Bonus, are eligible for tax deferral until the deferred compensation is paid, but they are distinct from "qualified employer plans." The I.R.C. designates Section 409A plans as "nonqualified deferred compensation plans," meaning they encompass any plan that provides for the deferral of compensation other than a "qualified employer plan." 26 U.S.C. Â§ 409A(d)(1)(A) (2018). Section 409A defines "qualified employer plans" as follows:
(i) A plan described in section 401(a) which includes a trust exempt from tax under section 501(a),
(ii) An annuity plan described in section 403(a),
(iii) A plan established for its employees by the United States, by a State or political subdivision thereof, or by an agency or instrumentality of any of the foregoing,
(iv) An annuity contract described in section 403(b),
(v) A simplified employee pension (within the meaning of section 408(k)),
(vi) Any simple retirement account (within the meaning of section 408(p)),
(vii) Any eligible deferred compensation plan (within the meaning of section 457(b)), or 
(viii) Any plan described in section 415(m).
26 U.S.C. Â§ 409A(d)(2) (2018).[9]
Â¶23 The list of "qualified employer plans" in I.R.C. Section 409A(d) is nearly identical to those plans and arrangements listed in Subsection 20 of Oklahoma's exemption statute. Subsection 20 cites specifically to some qualified employer plans and arrangements by their I.R.C. sections: Sections 403(a) & (b), and 457. Others are more generically described: "defined contribution plans" and "defined benefit plans" governed by I.R.C. Section 401(a), and "individual retirement accounts" and "simplified employee pension plans" governed by I.R.C. Section 408. See 31 O.S.2011, Â§ 1(A)(20).[10] From the use of the word "qualified" and the qualified employer plans listed in Subsection 20, we conclude Subsection 20 exempts those employer retirement plans or arrangements that are "qualified" as defined by the I.R.C.
Â¶24 In this matter, Adams and his employer entered into the Restated Agreement to ensure the Deferred Bonus complied with Section 409A. The Section 409A Deferred Bonus is not qualified under the I.R.C. The Deferred Bonus is, therefore, "nonqualified" and not exempt under Subsection 20.
CONCLUSION
Â¶25 To be exempt under 31 O.S.2011, Â§ 1(A)(20), the bankruptcy property must be an interest in a "retirement plan or arrangement qualified for tax exemption or deferment purposes." The Section 409A Deferred Bonus is bonus compensation that vested five years after executing an employment agreement and paid over the subsequent five years. The employer offered the Deferred Bonus to Adams as a performance incentive and not for retirement purposes. It does not meet the characteristics of a retirement plan or arrangement. Further, the Section 409A Deferred Bonus is not "qualified" under the I.R.C. as required by Subsection 20. We hold the Section 409A Deferred Bonus is not exempt under 31 O.S.2011, Â§ 1(A)(20).
CERTIFIED QUESTION ANSWERED
CONCUR: Gurich, C.J., Kauger, Winchester, Edmondson, Colbert, Combs, Kane, and Rowe, JJ.
NO VOTE: Darby, V.C.J.
FOOTNOTES
[1] The Court has not substantively reformulated the question of law, although it is within our discretion to do so. See 20 O.S.2011, Â§ 1602.1. We have altered the question only to conform to this Court's own citation conventions.
[2] The "Deferred Bonus" section of the First Amendment stated as follows:
2. Deferred Bonus. The following new Section 3.4 shall be inserted in Article III:
3.4 Deferred Bonus. Adams shall be entitled to a deferred bonus subject to the following ("Deferred Bonus"):
(a) Initial Value. As of the Effective Date, the value of the Deferred Bonus shall be One Hundred Thousand and No/100 Dollars ($100,000.00) ("Initial Value"), subject to the vesting provisions in (b) below.
(b) Vesting. The Initial Value shall vest over the five-year period following the Effective Date, at a rate of 20% per year, commencing on January 1, 2015 and on the same day each year until becoming fully vested on January 1, 2019 ("Vesting Date").
(c) Annual Value Increase. The Initial Value of the Deferred Bonus shall be adjusted each year, commencing as of the close of business on December 31, 2014 and on the same day of each year until the final adjustment as of the close of business on December 31, 2019, by an amount equal to the product of Company's net income for that year, as shown on the applicable audited income statement, multiplied by .01665 ("Annual Value Increase"). The Annual Value Increase for each calendar year shall be calculated and added to the Initial Value within thirty (30) days of receipt by Company of the applicable audited income statement and at such time, the Board shall notify Adams, in writing, of the amount of the adjustment to the Deferred Bonus. See example attached hereto as Exhibit A.
(d) Option to Receive Deferred Bonus. After the fifth anniversary of this Amendment, Adams may request payment (the date of such request to be the "Payment Date") of the Deferred Bonus (including the Initial Value and all Annual Value Increases) and if Company consents to such request, Company shall pay to Adams the Deferred Bonus either, in Company's discretion, in one lump sum or in five equal installments (Deferred Bonus divided by five) plus interest on the outstanding balance at the mid-term Applicable Federal Rate as of the Payment Date, commencing on the one year anniversary of the Payment Date and on the same day of each year thereafter until five installments have been paid, plus interest.
[3] The Restated Agreement called for payment on January 1st of each year. However, Boardman, LLC will make payments the first business day following January 1.
[4] Adams originally claimed his Deferred Bonus exempt under 60 O.S.2011, Â§Â§ 327-328. Trustee objected to this exemption. Adams then amended his claim of exemption and claimed his Deferred Bonus exempt under 31 O.S.2011, Â§ 1(A)(20). Adams has a Boardman, LLC 401(k) retirement plan with a value of over $350,000.00 that he also claimed exempt under 31 O.S.2011, Â§ 1(A)(20). Trustee conceded that the 401(k) retirement account is exempt.
[5] The Court notes the term "arrangement" is not defined in the I.R.C. It is, however, a term commonly used to describe an individual retirement account or annuity and to distinguish them from other forms of retirement savings vehicles. See e.g., 26 C.F.R. Â§ 1.408-6 (1980) ("Disclosure statements for individual retirement arrangements").
[6] Subsection 20 has one caveat to this analysis in that it lists educational individual retirement accounts (Educational IRAs). These accounts are primarily used to fund education needs. However, an Educational IRA is similar to a Roth IRA. The Legislature amended 31 O.S.2011, Â§ 1(A)(20) in 2005 to move Educational IRAs from a separate exemption in subsection 24 and Roth IRAs from a separate exemption in subsection 23 to Subsection 20. See 31 O.S.2003, Â§Â§ 1(A)(23) & (24) (superceded 2005). The Legislature kept a similar exemption regarding any interest in an Oklahoma College Savings Plan account as a separate exemption under a separate subsection. See 31 O.S.2011, Â§Â§ 1(A)(24). If the Legislature intended all savings plans or arrangements (and not just retirement plans or arrangements) to be included in the Subparagraph 20, the Legislature would have also included the exemption for any interest in an Oklahoma College Savings Plan account. Instead, the Legislature amended the statute to include only retirement accounts (including an Educational IRA due to its name including "retirement account") in Subsection 20. We reject the argument that the 2005 amendment changed the scope of Subsection 20.
[7] Section 409A can apply to elective deferrals of compensation, severance and separation options, equity incentive programs, reimbursements, and a variety of other items.
[8] See also In re Jokiel, 453 B.R. 743 (Bankr. N.D. Ill. 2011) (concluding that a Section 409A plan did not qualify for exemption under Illinois law); In re Gnadt, No. 11--10378--BFK, 2015 WL 2194475, at *9 (Bankr. E.D. Va. May 7, 2015) (concluding that a Section 409A plan did not qualify for exemption under Virginia law). 
[9] Section 1.409A-1(a)(2) of the Treasury Regulations defines a "nonqualified deferred compensation plan" as one that does not include a qualified employer plan. It further defines a qualified employer plan as any of the following plans:

(i) Any plan described in section 401(a) and a trust exempt from tax under section 501(a) or that is described in section 402(d). 
(ii) Any annuity plan described in section 403(a). 
(iii) Any annuity contract described in section 403(b). 
(iv) Any simplified employee pension (within the meaning of section 408(k)). 
(v) Any simple retirement account (within the meaning of section 408(p)). 
(vi) Any plan under which an active participant makes deductible contributions to a trust described in section 501(c)(18). 
(vii)Any eligible deferred compensation plan (within the meaning of section 457(b)). 
(viii) Any plan described in section 415(m). 
(ix) Any plan described in Â§ 1022(i)(2) of the Employee Retirement Income Security Act of 1974, Public Law 93-406 (88 Stat. 829, 942) (Sept. 2, 1974) (ERISA).

See 26 C.F.R. Â§ 1.409(A)-1(a)(2) (2007).
Further, I.R.C. Section 3121 defines terms for the Federal Insurance Contributions Act and specifically defines a "nonqualified deferred compensation plan" to mean "any plan or other arrangement for deferral of compensation other than a plan described in subsection (a)(5)." See 26 U.S.C. Â§ 3121(v)(2)(C) (2019). In turn, Section 3121(a)(5) provides that wages do not include payments made to retirement plans qualified under I.R.C. Section 401(a), other similar plans under I.R.C. Sections 403(a) & (b), Section 408, Section 457, or cafeteria plans under I.R.C. Section 125. See 26 U.S.C. Â§ 3121(a)(5) (2019).
Finally, the Federal Bankruptcy Code contains an exemption for retirement plans that is similar to Oklahoma's exemption and does not include Section 409A nonqualified deferred compensation plans. See 11 U.S.C. Â§ 522(d)(12) ("Retirement funds to the extent that those funds are in a fund or account that is exempt from taxation under section 401, 403, 408, 408A, 414, 457, or 501(a) of the Internal Revenue Code of 1986.").
[10] The Court notes that Subsection 20 does not refer generically to deferred compensation plans. Instead, it specifically exempts State deferred compensation plans under I.R.C. Section 457, which are qualified plans, without making mention of any other deferred compensation plans. See 31 O.S.2011, Â§ 1(A)(20).