In re Jerry A. SIMS, Debtor.

Bankruptcy No. 98–02382–M.

United States Bankruptcy Court, N.D. Oklahoma.

Nov. 23, 1999.

Sidney K. Swinson, Tulsa, OK, for debtor.

Leonard W. Pataki, Tulsa, OK, for Vickye Madewell.

Steven W. Soule, Tulsa, OK, trustee.

### MEMORANDUM OPINION

TERRENCE L. MICHAEL, Chief Judge.

THIS MATTER comes before the Court pursuant to the Objection to Claim of Ex-

emption filed by Steven W. Soulé, Trustee herein ("Soulé" or "Trustee"), and the Objection to Exemptions filed by Vickye Madewell ("Madewell"), a creditor and party-in-interest. By agreement of the parties, this matter was submitted to the Court on stipulated facts and briefs. This memorandum opinion constitutes the Court's findings of fact and conclusions of law pursuant to Bankruptcy Rules 7052 and 9014 and Federal Rule of Civil Procedure 52.

## Jurisdiction

The Court has jurisdiction over this matter pursuant to 28 U.S.C. § 1334(b),[1] and venue is proper pursuant to 28 U.S.C. § 1409. Reference to the Court of this matter is proper pursuant to 28 U.S.C. § 157(a), and it is a core procedure as contemplated by 28 U.S.C. § 157(b)(2)(A) and (O).

## Burden of Proof

■ The burden of proof is upon the objecting parties, Soulé and Madewell, to show by a preponderance of the evidence that the exemptions were not properly claimed. *See* Fed.R.Bankr.P. 4003 (West 1998); *see also In re Simpson*, 206 B.R. 230, 232 (Bankr.E.D.Okla.1997).

## Findings of Fact

On or about March 26, 1990, Hugh A. Sims established an Individual Retirement Account at the Trust Company of Oklahoma of Tulsa, designated as Account No. 1482–01–05 (the "IRA"). At the time the IRA was established, the Hugh A. and Virginia M. Sims Trust was designated as the beneficiary of the IRA. On October 9, 1995, Hugh A. Sims executed a Change of Beneficiary for the IRA, which designated Dr. Jerry A. Sims ("Dr. Sims" or "Debtor") as a beneficiary entitled to receive one-third of the proceeds of the IRA upon the death of Hugh A. Sims. Two other

children of Hugh A. Sims were also named as beneficiaries.

Hugh A. Sims passed away on October 11, 1995, and his interest in the IRA passed to the named beneficiaries, including Debtor. In 1997, exercising his rights as a beneficiary, Dr. Sims withdrew $32,-150.00 from the IRA. In 1998, once again exercising those rights, Dr. Sims withdrew $1,998.00 from the IRA. Dr. Sims has never made any contributions to the IRA, nor has he claimed any income tax deductions for contributions made to the IRA.

Dr. Sims filed a Voluntary Petition for Relief under Chapter 7 of the United States Bankruptcy Code with this Court on June 17, 1998. He has claimed his interest in the IRA as exempt. As of the date this bankruptcy case was filed, the value of Dr. Sims' interest in the IRA was approximately $57,868.57. The Trustee and Madewell have filed timely objections to the claimed exemption.

To the extent the "Conclusions of Law" contain any items which should more appropriately be considered "Findings of Fact," they are incorporated herein by this reference.

## Conclusions of Law

■ Pursuant to § 522 of the Bankruptcy Code a Chapter 7 debtor may exempt certain property from the bankruptcy estate and place it beyond the reach of creditors, while non-exempt property becomes part of the bankruptcy estate. Oklahoma has chosen to opt-out of the federal exemption scheme, limiting the exemptions available in bankruptcy cases to those allowed under state law. *See* § 522(b)(1), and *see* Okla.Stat.Ann. tit. 31, § 1 *et seq.* (West 1991 & Supp.1998), respectively. In claiming his interest in the IRA as exempt, Dr. Sims has relied upon certain Oklahoma statutory provisions allowing certain interests in individual retirement accounts to be claimed as exempt.[2]

---

1. Unless otherwise noted, all statutory references are to sections of the United States Bankruptcy Code, 11 U.S.C. § 101 *et seq.* (West 1999).

2. Dr. Sims relies upon the following statutory provision:
 A. Except as otherwise provided in this title and notwithstanding subsection B of

Individual retirement accounts are investment vehicles which allow for deferral of taxation upon monies set aside for retirement. An individual establishing an individual retirement account may make annual contributions to the account in an amount of not more than $2,000.00. *See* 26 U.S.C. § 408(a)(1) (1999). The amount so contributed together with any income generated thereby, is not taxed until the person begins to take distributions from it. *See* 26 U.S.C. § 408(d)(1) (1999). Such distributions may begin as early as age 59½, and must begin no later than age 70½. *See* 28 U.S.C. § 401(a)(9)(C) (1999). If the individual who established the account takes funds from the account prior to age 59½, not only must that individual pay income tax on the money so received, the monies so received are subject to a 10% penalty. *See* 26 U.S.C. § 72(t)(1) (West

1999). The purpose of the penalty is to deter attempts to obtain premature access to the funds. The penalty does not apply when the distribution is "made to a beneficiary (or to the estate of the employee) on or after the death of the employee." *See* 28 U.S.C. § 72(t)(2) (West 1999).

The parties concede that the IRA was an "individual retirement account" for purposes of the Oklahoma exemption statute.[3] There is little doubt that if Hugh A. Sims were the debtor in this case, he could properly claim the IRA as exempt. However, Dr. Sims acquired his interest in the IRA upon the death of his father. As such, his interest in the IRA constitutes an "inherited individual retirement account" for purposes of the Internal Revenue Code. *See* 26 U.S.C. § 408(d)(3)(C)(ii) (1999).[4] The issue of whether one holding a beneficial interest in an individual retire-

this section, the following property shall be reserved to every person residing in the state, exempt from attachment or execution and every other species of forced sale for the payment of debts, except as herein provided:

20. Subject to the Uniform Fraudulent Transfer Act, Section 112 et seq. of Title 24 of the Oklahoma Statutes, *any interest in a retirement plan or arrangement qualified for tax exemption purposes* under present or future Acts of Congress; provided, such interest shall be exempt only to the extent that contributions by or on behalf of a participant were not subject to federal income taxation to such participant at the time of such contributions, plus earnings and other additions thereon; provided further any transfer or rollover contribution between retirement plans or arrangements which avoids current federal income taxation shall not be deemed a transfer which is fraudulent as to a creditor under the Uniform Fraudulent Transfer Act. "Retirement plan or arrangement qualified for tax exemption purposes" shall include without limitation, trusts, custodial accounts, insurance, annuity contracts and other properties and rights constituting a part thereof. By way of example and not by limitation, retirement plans or arrangements *qualified for tax exemption purposes* permitted under present Act of Congress include defined contribution plans and defined benefit plans as defined under the Inter-

nal Revenue Code ("IRC") *individual retirement accounts*, individual retirement annuities, simplified employee pension plans, Keogh plans, IRC Section 403(a) annuity plans, IRC Section 403(b) annuities, and eligible state deferred compensation plans governed under IRC Section 457. This provision shall be in addition to and not a limitation of any other provision of the Oklahoma Statutes which grants an exemption from attachment or execution and every other species of forced sale for the payment of debts. This provision shall be effective for retirement plans and arrangements in existence on, or created after the effective date of this act.

*See* Okla.Stat.Ann. tit. 31, § 1(A)(20) (West 1991 & Supp.1998) (emphasis added).

3. Section 408(a)(1) of the Internal Revenue Code sets forth six elements which must be present in order for an account to qualify as an individual retirement account. *See* 26 U.S.C. § 408(a)(1) (1999).

4. Under the Internal Revenue Code, "(I) [a]n individual retirement account or individual retirement annuity shall be treated as inherited if the individual for whose benefit the account or annuity is maintained acquired such account by reason of a death of another individual, and (II) such individual was not the surviving spouse of such other individual." *See* 26 U.S.C. § 408(d)(3)(C)(ii)(I) & (II) (1999).

ment account by virtue of inheritance may claim the same as exempt appears to be a case of first impression. Dr. Sims argues that the Oklahoma exemption statute is sufficiently broad as to exempt his interest in the IRA. The Trustee and Madewell argue that an "inherited individual retirement account" is not exempt under Oklahoma law.

Once classified as an "inherited individual retirement account," the Internal Revenue Code places an entirely different set of rules upon the use, distribution and taxation of the funds in the individual retirement account. Once the account has been "inherited," the beneficiary may make no contributions to the account, nor may he or she "roll over" the inherited individual retirement account into another retirement plan. *See* 26 U.S.C. § 408(d)(3) (West 1999).[5] He or she is required to take distributions from the account over a relatively limited period of time, in most cases five years.[6] Upon receipt, those distributions are fully taxable. *See* 26 U.S.C. § 408(d)(1) (1999). These restrictions are not applicable where the beneficiary is the spouse of the person who established the individual retirement account. *See* 26 U.S.C. § 408(d)(3)(C)(ii)(II) (1999).

Under these provisions, fundamental changes in the nature of the IRA occurred upon the death of Hugh A. Sims. Prior to his death, all taxes on the funds in the IRA were deferred. Hugh A. Sims was not required to withdraw (and pay taxes upon) any of the funds in the IRA until he reached the age of 70½. Indeed, if he desired to obtain any of the funds in the IRA prior to age 59½, he faced the pros-

pect of paying a penalty equal to 10% of the amount withdrawn. On the other hand, Debtor is *required* to withdraw his entire interest in the IRA within five years of the death of Hugh A. Sims, i.e., on or before October 11, 2000. Said withdrawal carries with it no penalty, although the distributions are subject to ordinary income tax. Once in the hands of Dr. Sims, the IRA is no longer a tool to defer taxation on income in order to provide for retirement; instead, the IRA is a liquid asset which may be accessed by Dr. Sims at his discretion without penalty, and which he *must* take as income within a relatively short period of time without regard for his retirement needs. The Court concludes that the interest of Dr. Sims in the IRA is not an "interest in a retirement plan or arrangement qualified for tax exemption purposes" under Oklahoma law. As such, Dr. Sims is not entitled to claim his interest in the IRA as exempt.

 As this Court issues its ruling, it is mindful of the purpose of all exemption statutes as set forth by the Oklahoma Supreme Court:

> The purposes of the exemption statute are to prevent improvident debtors from becoming subjects of charity by preserving to them sufficient definitely classified property that they maintain a home for themselves, and to prevent inconsiderate creditors from depriving them of the necessities of life. It is the duty of the court to so apply these exemption statutes to accomplish these purposes.

*See Security Building & Loan Ass'n v. Ward,* 174 Okla. 238, 50 P.2d 651, 657

---

5. *See also* INTERNAL REVENUE SERVICE, U.S. DEPARTMENT OF THE TREASURY, Publication 590, Page 28, INDIVIDUAL RETIREMENT ARRANGEMENTS (1997) ("... if you inherit an IRA from someone other than your spouse, you cannot treat it as though you established it. The IRA cannot be rolled over into, or receive a rollover from, another IRA. No deduction will be allowed for amounts paid into that inherited IRA, nor can nondeductible contributions be made into an inherited IRA.").

6. 26 U.S.C. § 401(a)(9)(B)(ii) provides that

A trust shall not constitute a qualified trust under this section unless the plan provides that, if an employee dies before the distribution of the employee's interest has begun in accordance with subparagraph (A)(ii), the interest of the employee will be distributed within 5 years after the death of such employee.

This section is made applicable to individual retirement accounts by 26 U.S.C. § 408(a)(6).

(1935), cited with approval in *In re Payne*, 215 B.R. 889, 891–892 (Bankr.N.D.Okla. 1997). The Court believes that its decision today is consistent with the oft-cited maxim that the Oklahoma exemption laws are to be liberally construed in favor of the exemption. *See, e.g., Nelson v. Fightmaster*, 4 Okla. 38, 41, 44 P. 213, 214 (1896); *Phelan v. Lacey*, 51 Okla. 393, 394, 151 P. 1070, 1071 (1915); *In re Fisher*, 11 B.R. 666, 668 (Bankr.W.D.Okla.1981). This Court agrees with the concept of "liberal construction" as illuminated by the Honorable Mickey D. Wilson:

> Oklahoma's exemption statutes are to be liberally construed ... all Oklahoma statutes are to be "liberally construed," 12 O.S. § 2, 25 O.S. § 29, which surely does not mean that all Oklahoma statutes are to be stretched as far as they will go. The rule of "liberal construction" merely means that statutes shall be interpreted and applied sensibly rather than literally, with due regard for legislative purpose. Liberal construction reads and applies a statute in furtherance of the legislative purpose; whether that purpose be generous or restrictive. It is often said that, in determining whether property should be exempt, any doubt should be resolved in favor of exemption; *see e.g. In re Fisher*, 11 B.R. 666 (Bkrtcy.W.D.Okl.1981) at p. 668, *citing Nelson v. Fightmaster, supra*, and *Phelan v. Lacey*, 51 Okl. 393, 151 P. 1070 (Okl.1915). But this benefit-of-doubt rule encouraging broad application of exemption statutes was merely announced as dicta in *Nelson v. Fightmaster* and *Phelan v. Lacey*; in *Hoyt v. Pullman*, 51 Okl. 717, 152 P. 386 (Okl. 1915), it was invoked and actually applied only as to "minor items," 51 Okl. p. 722, 152 P. 386. Generally, "Oklahoma case law has construed and applied exemptions in a reasonably limited manner," *In re Helmuth*, 92 B.R. 494, 498 (Bankr.N.D.Okl.1988).

*See In re McKaskle*, 117 B.R. 671, 674 (Bankr.N.D.Okla.1990) (citations omitted). The purpose of the Oklahoma Legislature in exempting individual retirement accounts is to allow debtors to preserve assets which have been earmarked for retirement in the ordinary course of the debtor's affairs. Such a purpose would not be served by upholding Debtor's request to keep his interest in the IRA as exempt.

As previously indicated, the case at bar appears to be one of first impression. None of the able counsel who argued this matter presented any case law on point in support of their position, and the Court was unable to locate any such authority during the course of its own research. However, the rationale for a recent decision of the United States Court of Appeals for the Eighth Circuit is of some assistance to the Court. In *Eilbert v. Pelican (In re Eilbert)*, 162 F.3d 523 (8th Cir.1998) (hereafter *"Eilbert"*), Eilbert's husband was killed in an auto accident in 1994, in which another party (Pelican) was severely injured. Pelican sued Eilbert as the joint owner of the vehicle for his personal injuries. Thereafter, fearing the loss of assets in the event of a judgment in favor of Pelican, Eilbert converted a large amount of her assets into a $450,000.00 annuity (the "Annuity"). Under the terms of the Annuity, Eilbert would begin receiving monthly payments less than two months after the purchase of the Annuity, with the balance of the funds being distributed to her children upon her death. In November of 1995, Pelican obtained a judgment in excess of $662,000.00 against Eilbert. Eilbert responded by filing a petition for relief under Chapter 7 of the Bankruptcy Code. Eilbert claimed the Annuity as exempt, relying upon an Iowa statute which allowed an exemption for

> The debtor's rights in ... [a] payment or a portion of a payment under a pension, annuity, or similar plan or contract on account of illness, disability, death, age, or length of service, unless the payment or a portion of the payment results from contributions to the plan or contract by the debtor within one year prior to the filing of a bankruptcy petition,

which contributions are above the normal and customary contributions under the plan or contract, in which case the portion of the payment attributable to the contributions above the normal and customary rate is not exempt.

*Eilbert*, 162 F.3d at 526 (citation omitted). As it rejected Eilbert's claim of exemption, the Court of Appeals noted that

Eilbert argues her single premium variable annuity is exempt because (i) it is an "annuity," (ii) she purchased it more than one year before bankruptcy, and (iii) she began receiving payments at age 74, "well past retirement age under any definition." *Exemption statutes are construed liberally, but for the purpose of achieving the legislative intent, not to "extend the provisions of the legislative grant." Iowa Methodist Hosp. v. Long*, 234 Iowa 843, 12 N.W.2d 171, 175 (Iowa 1943); *see Wertz v. Hale*, 212 Iowa 294, 234 N.W. 534, 535 (1931); *In re Wiley*, 184 B.R. 759, 766 (N.D.Iowa 1995); *Matter of Knight*, 75 B.R. 838, 839 (Bankr.S.D.Iowa 1987). Eilbert's contention, if adopted, would convert a statute intended to protect "benefits that are akin to future earnings"—which for the elderly are typically retirement earnings—into a statute conferring vastly broader bankruptcy protection. As the bankruptcy court observed:

If annuity payments were "on account of age" merely because the debtor purchased the annuity when she was past retirement age, all persons past retirement age should move their assets into such an annuity and then file bankruptcy.... Under this scheme, no debtor past retirement age would

have any assets subject to execution, could live in a million-dollar home, have a substantial stream of income, virtually live off his creditors, and yet be judgment proof.

*Id.* (no citation to lower court in original) (emphasis added). In the present case, Dr. Sims argues that a statute designed to protect funds set aside in the ordinary course of the debtor's financial affairs for retirement purposes may properly be used to shield a cash inheritance, available to Dr. Sims at his will without penalty[7] and which must be taken by Dr. Sims well in advance of his own retirement age.[8] Such protection would go far beyond the legislative purpose of the exemption statute.

Debtor asks the Court to look to the exemption laws of other states for support of his position that, under Oklahoma law, his claimed exemption in the IRA should be allowed.[9] The Court has reviewed the statutes cited by Dr. Sims and is unpersuaded that they support his position. Debtor has presented no authority to the Court to indicate that the courts of any of those states have interpreted the terms of those statutes in Debtor's favor. In any event, Dr. Sims resides in Oklahoma and is governed by its laws. The Oklahoma statute specifically requires that, in order to be the subject of a proper claim of exemption, the interest at issue *must* be "qualified for tax exemption purposes." This Court has determined that the interest of Debtor in the IRA is not so qualified.

### Conclusion

Debtor may not claim the IRA as exempt. The objections to Debtor's claim of exemption with respect to the IRA are sustained. A separate order consistent

---

7. The Court does not consider the fact that Dr. Sims will be required to pay income tax on the funds as they are received any more of a penalty than that felt by any taxpayer as he or she pays taxes on their own earnings.

8. According to the change of beneficiary form attached to the stipulation of facts as Exhibit "B," Dr. Sims was born on December 8, 1954, making him currently 44 years of age.

9. Debtor has called to the attention of the Court statutory provisions of the states of Florida, Virginia, Kansas, Maryland and Tennessee. *See* Fla.Stat. § 222.21(2)(a) (West 1999); Va.Code.Ann. § 34–34(B); K.S.A. § 60–2308(c) (West 1999) (Kansas); Md.Cts. & Jud.Proc.Code Ann. § 11–504(h) (Michie 1994) (Maryland); and R.S.Mo. § 513.430(f) (1994) (Missouri).

with this Memorandum Opinion is entered concurrently herewith.